941 A.2d 686

COMMONWEALTH of Pennsylvania, Appellee,

v.

Ricky MALLORY, Appellant.

Commonwealth of Pennsylvania, Appellee,

v.

Braheem Lewis, Appellant.

Commonwealth of Pennsylvania, Appellee,

v.

Hakim Lewis, Appellant.

Nos. 28 EAP 2006, 29 EAP 2006, 30 EAP 2006.

Supreme Court of Pennsylvania.

Argued Oct. 18, 2006.

Decided Feb. 19, 2008.

176

Patrick Joseph Egan, Esq., Philadelphia, for Ricky Mallory.

Hugh J. Burns, Jr., Esq., Peter Carr, Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Burton A. Rose, Esq., Philadelphia, for Braheem Lewis.

Burton A. Rose, Esq., Philadelphia, for Hakim Lewis.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Chief Justice CASTILLE.*

* This matter was reassigned to this author.

Ricky Mallory, Braheem Lewis, and Hakim Lewis [1] (collectively "appellants") were tried together in a bench trial and found guilty of aggravated assault, attempted murder, and lesser crimes. After their direct appeals were unsuccessful, each appellant later filed a petition seeking collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. Each appellant alleged, among other claims, that his trial lawyer was ineffective in failing to challenge the knowing, voluntary, and intelligent nature of his jury trial waiver, noting that the trial court, without objection from counsel, had failed to conduct an on-the-record, oral jury waiver colloquy as is contemplated by Pa.R.Crim.P. 620. Following hearings at which appellants and their former counsel testified, the PCRA court held that appellants had proven their claims of ineffective assistance of counsel and granted each appellant a new trial. On the Commonwealth's appeal, the Superior Court reversed, holding that appellants had failed to establish prejudice. Specifically, the Superior Court, citing the lead opinion in *Commonwealth v. Lassiter*, 554 Pa. 586, 722 A.2d 657 (1998) (Opinion Announcing Judgment of the Court, or "OAJC"), found that they had failed to show that the outcome of their joint trial would have been more favorable if it had been conducted before a jury. For the following reasons, we vacate the order of the Superior Court and remand this matter to the PCRA court for proceedings consistent with this Opinion.

On August 26, 1997, appellants fired multiple shots at Dante Hunter while he was driving down 43rd Street in West Philadelphia. Appellants were later arrested and charged with multiple crimes arising from the incident. On September 15, 1998, appellants appeared for trial before the Honorable Rayford A. Means. Attorney David Mischak represented Mallory, Attorney Tariq El–Shabazz represented Braheem Lewis, and Attorney Guy Sciolla represented Hakim Lewis. Appellants each entered a plea of not guilty, signed a standard

---

1. Hakim Lewis spelled his name as "Hakeem Lewis" on his written jury trial waiver colloquy. Written Jury Trial Waiver Colloquy of Hakim Lewis at 1.

jury trial waiver form, and completed a written jury trial waiver colloquy. The written colloquy contained thirty-nine questions [2] concerning appellants' knowledge and comprehension of the right that they were waiving.

The jury trial waiver forms stated that each appellant understood the following fundamentals of a jury trial:

(a) the jury would be chosen from members of the community thereby producing a jury of his peers;

(b) any verdict rendered by a jury must be unanimous, that is, all twelve jurors must agree before they can return a verdict of guilty; and

(c) he would be permitted to participate in the selection of the jury.

Waiver Form, at 1. The written waivers asked whether appellants understood more specific principles of a jury trial, including: the Commonwealth's burden of proof, the defendant's ability to participate in choosing the jurors, the defendant's ability to challenge and strike jurors and, again, the unanimity requirement for the jury to render a verdict of guilty. Each written colloquy was signed by the respective appellant, his counsel, and the prosecutor. Each appellant initialed each page of his written waiver colloquy, and each signed a declaration on page four of the colloquy confirming that: "I have answered the questions on the above Defendant Information Sheet and I have reviewed this entire matter with my attorney and I understand all of the information given above." Each of those certifications was followed by the signature of defense counsel as a witness.

Also on each form, just below defense counsel's signature, is a "certification" signed by the Assistant District Attorney, stating that she had asked the defendant if there was anything he did not understand on the written waiver colloquy form, or if there was anything else he did not understand, that the

---

**2.** In the Commonwealth's motion to dismiss appellants' PCRA petitions, it stated that appellants answered 42 items in the written jury waiver colloquy. It is not entirely clear how the Commonwealth arrived at that number; this Opinion refers to the number of separately numbered points of inquiry in the written jury trial waiver colloquy.

defendant indicated his understanding of everything set forth in the form, and that any questions concerning the waiver of a jury had been answered by his attorney. On the bottom of the fourth page is a certification for the trial court to execute which states, *inter alia,* that the court is "satisfied that the defendant fully understands the nature and quality of the Jury Trial Waiver." The trial judge signed that certification on the written waiver colloquies of appellants Mallory and Hakim Lewis, but did not sign it on Braheem Lewis's written colloquy.

In open court, the trial judge, after being informed that the parties were seeking a non-jury trial, asked if the "waiver colloquies are done and the Assistant District Attorney has signed it." Notes of Testimony ("N.T.") Waiver Trial, 9/15/98, at 4–5. The prosecutor responded in the affirmative. After discussion of an unrelated issue, the court then noted that it had signed each of the written jury waivers. *Id.* at 8. None of the appellants or their counsel objected to the jury waiver process. Although the trial court acknowledged on the record that the waivers had been signed by each appellant, the trial court did not conduct an on-the-record oral waiver colloquy for appellants. Nor did any appellant request an oral colloquy. The case then immediately proceeded to a joint bench trial.

On September 17, 1998, Judge Means found each appellant guilty of attempted murder,[3] aggravated assault,[4] possession of an instrument of crime,[5] violation of the Uniform Firearms Act,[6] criminal conspiracy,[7] and recklessly endangering another person.[8] On October 5, 1998, the trial court denied appellants' post-verdict motions and sentenced each appellant to an aggregate sentence of forty-five to ninety years of imprisonment. Appellants filed motions for reconsideration, which were

3. 18 Pa.C.S. §§ 901 (criminal attempt), 2502 (murder).
4. 18 Pa.C.S. § 2702.
5. 18 Pa.C.S. § 907(b).
6. 18 Pa.C.S. § 6108.
7. 18 Pa.C.S. § 903.
8. 18 Pa.C.S. § 2705.

granted in part as each aggregate was reduced to thirty-five to seventy years of imprisonment.[9] Appellants' motions for reconsideration based on after-discovered evidence were denied. Thereafter, appellants filed appeals to the Superior Court, which affirmed their judgments of sentence.[10] This Court declined further discretionary review of each appeal. *See Commonwealth v. Braheem Lewis*, 563 Pa. 699, 761 A.2d 548 (2000) (Table); *Commonwealth v. Mallory*, 564 Pa. 728, 766 A.2d 1245 (2000) (Table); *Commonwealth v. Hakim Lewis*, 566 Pa. 638, 781 A.2d 141 (2001) (Table). During their direct appeals, the Lewises were jointly represented by new counsel, F. Emmett Fitzpatrick, Esquire, and Mallory was represented by his trial counsel.

On November 28, 2001, the Lewises filed counseled petitions for relief under the PCRA. On December 11, 2001, Mallory filed a *pro se* PCRA petition and he was appointed counsel. Amended petitions were filed. Each appellant claimed, *inter alia*, that his trial counsel was ineffective for failing to challenge the voluntary, knowing, and intelligent nature of his jury trial waiver. Evidentiary hearings were held by the PCRA court on November 24, 2003 and December 4, 2003.

Mallory testified and claimed that he would have opted for a jury trial if the trial court had conducted an on-the-record, oral jury waiver colloquy. N.T. PCRA Hearing, 11/24/03, at 6–7, 14. Mallory further claimed that he had signed his written jury waiver only because he thought he had to sign because his co-defendants had already signed their waiver documents when he arrived in the courtroom. Mallory also testified that: he reviewed the written waiver colloquy for approximately ninety seconds prior to signing; he did not actually read the waiver colloquy during those ninety seconds; his trial counsel did not review the waiver colloquy with him;

---

**9.** Appellants were originally sentenced to ten to twenty years for aggravated assault, but those sentences were vacated.

**10.** The Lewises filed a consolidated direct appeal to the Superior Court on February 25, 1999, which affirmed their judgments of sentence on April 19, 2000. Mallory filed his direct appeal on March 12, 1999, and his judgment of sentence was affirmed by the Superior Court on July 3, 2000.

and he and his trial counsel never discussed a bench trial. *Id.* at 9–10, 16. Mallory's trial lawyer, Attorney Mischak, testified that, during his pretrial discussions with Mallory, it was clear that his client preferred a jury trial. Mischak could no longer recall whether he went over the jury waiver form with Mallory, but noted that it was his practice to explain to his clients in waiver trials that they had a personal right to a jury trial, and that he would not have done anything to coerce a jury waiver. Mischak further testified that it was Attorney Sciolla, Hakim Lewis' lawyer, who first suggested proceeding with a bench trial, a suggestion made on the morning of trial. *Id.* at 24–26, 30–32.

Attorney El–Shabazz testified that all of his discussions with his client, appellant Braheem Lewis, had centered on proceeding with a jury trial, with the exception of the day of trial. N.T. PCRA Hearing, 12/4/03, at 6–7. Furthermore, El–Shabazz testified that, after speaking with Attorney Sciolla, he believed that a bench trial offered his client a better prospect of a favorable verdict. El–Shabazz thus recommended to his client that he should waive a jury. He further testified that he explained the written colloquy to his client, who understood what he was waiving. El–Shabazz added that he believed his client "was waiving his right to a jury definitely knowingly and intelligently, meaning he understood what was going on." El–Shabazz acknowledged that his client wavered "back and forth," but voluntarily "submitted to" his recommendation. Finally, El–Shabazz noted that, in every case involving such decisions, he emphasized to his client that: "Any decision is solely yours. I'll do whatever your marching orders are." *Id.* at 9–12, 18, 21, 26.

Braheem Lewis testified and confirmed that he and El–Shabazz had "debated" whether to waive a jury trial and that El–Shabazz thought a waiver trial was a better strategy. Braheem Lewis also claimed that, while El–Shabazz did review the jury waiver form with him, he still did not understand that he could have a jury trial if he so preferred. N.T. PCRA Hearing, 11/24/03, at 44, 53–54.

Attorney Sciolla testified that he explained the basics of a jury trial to his client, Hakim Lewis, and explained to the PCRA court why he preferred a bench trial for his client. In Sciolla's view, a non-jury trial was preferable because, in a joint trial, there was a greater risk that a jury would fail to render an individual verdict after hearing about the bad acts of his client's co-defendants. Sciolla stated that he would never intentionally overrule his client's decision to elect a jury trial. Sciolla also testified that he went over each question on the waiver form with his client before his client signed the form. Sciolla could not recall if his client balked privately at the prospect of proceeding non-jury. N.T. PCRA Hearing, 11/24/03, at 28, 30–32, 35.

Hakim Lewis testified that he told Attorney Sciolla that he preferred a jury trial and claimed that he neither read nor voluntarily signed the waiver form. He claimed that Sciolla told him the case had to be tried as a bench trial before Judge Means. *Id.* at 7, 9, 15–19. Attorney Fitzpatrick, the Lewises' appellate counsel, testified that he could no longer recall anything of substance concerning his representation of the Lewises on direct appeal, but that if they had indicated that their jury waivers were involuntary, he would have pursued the issue. N.T. PCRA Hearing, 12/4/03, at 33–34. Additionally, both Hakim Lewis and Braheem Lewis testified that they never informed Fitzpatrick of any difficulty or concern respecting their jury waivers. N.T. PCRA Hearing, 11/24/03, at 13, 47–48, 56.

On March 2, 2004, following oral argument, the PCRA court granted appellants' requests for relief on their claims of counsel ineffectiveness regarding the jury trial waiver. The court correspondingly declared appellants' remaining claims moot. N.T. PCRA Hearing, 3/2/2004, at 22.

The PCRA court later addressed its basis for granting relief in separate opinions. The opinions made clear that the key to the PCRA court's thinking was its belief that the absence of on-the-record oral waiver colloquies rendered the jury waivers invalid as a matter of law. Thus, in each opinion, the court began its discussion with this analysis: "[a]fter reviewing the

available record, this Court finds that the trial court erred in not conducting an on-the-record colloquy of Petitioner's waiver of a jury trial, and therefore Petitioner's waiver was not knowing and intelligent and was in violation of the Sixth Amendment." *Commonwealth v. Mallory,* PCRA Ct. Op. at 2; *Commonwealth v. Braheem Lewis,* PCRA Ct. Op. at 2; *Commonwealth v. Hakim Lewis,* PCRA Ct. Op. at 2. The PCRA court then discussed the particulars of each case. With regard to Mallory, the PCRA court noted that it accepted his testimony regarding his belief that he was required to agree to a waiver trial because his co-defendants had signed waiver forms. The PCRA court also accepted each appellant's testimony that he had insufficient time to comprehend the written waiver form and that each did not realize that the ultimate decision of whether to proceed with a bench or jury trial was his individual choice. The court also observed that Braheem Lewis's waiver form was not signed by the trial court.

Furthermore, the PCRA court rejected the Commonwealth's contention that the written waiver forms were sufficient without an oral colloquy. In the PCRA court's view, Pennsylvania case law requires a written jury waiver form to be supplemented with an oral colloquy. The PCRA court reasoned that appellants' faulty understanding of their jury trial rights could have been remedied with an oral colloquy and that an oral colloquy would have given them an opportunity to explain that their written waivers were not voluntary. In sum, the PCRA court determined that appellants' ineffectiveness claims had merit because their counsel were ineffective in failing to object to the absence of on-the-record, oral waiver colloquies, which rendered appellants' waivers not knowing, voluntary, and intelligent as required by the Sixth Amendment. The court further found that appellants' trial lawyers lacked reasonable bases for failing to object to the absence of oral colloquies. With respect to the Lewises' direct appeal counsel, the court found that Attorney Fitzpatrick's failure to raise the issue of trial counsel's failure to object to the absence of oral colloquies lacked a reasonable basis. The

PCRA court then concluded that counsel were ineffective, and therefore awarded a new trial to each appellant.

On the Commonwealth's appeal, the Superior Court reversed in a published opinion. *Commonwealth v. Mallory*, 888 A.2d 854 (2005). The panel noted that appellants' jury waiver claims were embedded in prior counsel's alleged ineffective assistance and, therefore, the claims were subject to the traditional ineffectiveness test. The panel emphasized, inter alia, that to prevail on an ineffectiveness claim, the PCRA petitioner must show that he was prejudiced by counsel's action or inaction. The panel then noted that none of the witnesses at the PCRA hearing offered testimony regarding any prejudice suffered and that the PCRA court's opinion contained no analysis regarding the prejudice suffered by appellants. The panel determined that, under the *Lassiter* OAJC, prejudice is established only where there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the trial would have been different. *Id.* at 859–60 (citing *Lassiter*, 722 A.2d at 662–63). In the panel's view, appellants pointed to nothing in the record to suggest that the trial court had improperly weighed evidence or that a jury would have viewed the evidence more sympathetically. The panel found, therefore, that appellants had failed to establish that the alleged ineffectiveness of their trial counsel resulted in prejudice. Moreover, the panel observed that there is no compelling Pennsylvania case law to suggest that a court may presume prejudice when a defendant alleges an ineffectiveness claim in the context of a violation of Criminal Rule 620. Accordingly, the panel vacated the PCRA court's new trial order and remanded for consideration of appellants' remaining claims.

■ We granted further review primarily to consider the proper approach to prejudice in the present ineffective assistance of counsel context, because the question was not definitively resolved by *Lassiter*.[11] That issue poses a question of

11. In *Lassiter*, this author wrote the OAJC, which was joined by then-Mr. Justice Cappy and Madame Justice Newman. Mr. Justice Nigro concurred in the result without opinion. Mr. Justice Saylor issued a

law and, accordingly, our scope of review is plenary and our standard of review is *de novo*. *Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815, 816 n. 1 (2006).

In *Lassiter,* the appellant waived the right to a jury trial in exchange for the Commonwealth's promise not to seek the death penalty. Following a bench trial, the appellant was found guilty of second-degree murder, criminal conspiracy, robbery, and possession of an instrument of crime. A mandatory sentence of life imprisonment was imposed for murder. After the judgment of sentence was affirmed on direct appeal, the appellant sought collateral relief under the PCRA, which was denied by the PCRA court. The Superior Court affirmed and this Court granted further review. The question on appeal, as pertinent here, was whether Lassiter's trial counsel was ineffective for failing to advise her that the Commonwealth's promise not to seek the death penalty if she agreed to a waiver trial was illusory because there was a strong argument to be made that the case was not death-eligible. This was so, the appellant argued, because the only alleged aggravating circumstance—that "[t]he defendant committed a killing while in the perpetration of a felony," 42 Pa.C.S. § 9711(d)(6)—should be deemed inapplicable because she was an accomplice to the murder and not a principal. 722 A.2d at 658–59. (Implicit in the appellant's claim was that trial counsel's failure to realize that the Commonwealth's promise was illusory, and to so advise the appellant, compromised the voluntariness of her jury waiver.)

The Commonwealth in *Lassiter* disputed the appellant's interpretation of the scope of the (d)(6) aggravator, arguing that it encompassed accomplices along with principals, and also arguing, in the alternative, that counsel's alleged ineffectiveness in this regard was not prejudicial. The *Lassiter* OAJC analyzed the appellant's claim pursuant to the familiar performance and prejudice test for ineffectiveness derived from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Commonwealth v. Pierce,* 515 Pa.

dissenting opinion, which was joined by then-Chief Justice Flaherty and Mr. Justice Zappala.

153, 527 A.2d 973 (1987). The OAJC found that the appellant's argument that the statutory aggravator did not apply to accomplices had arguable merit and that trial counsel had no reasonable basis for failing to advise his client of the argument to be made that the Commonwealth's promise not to seek the death penalty was illusory. *Id.* at 661–62.

Addressing the prejudice prong of the *Strickland/Pierce* framework, the OAJC noted that the appellant was obliged to prove actual prejudice, which it described as a showing "by a reasonable probability that the outcome of her trial would have been different but for trial counsel's ineffective assistance." *Lassiter,* 722 A.2d at 662. The OAJC concluded that the appellant had failed in this regard because she did not even attempt to establish (by affidavit from herself or counsel, or by request for a hearing) that she in fact would have selected a jury had she known that the death penalty was not likely to apply to her under Pennsylvania law. The OAJC noted that the Court could not presume the factual predicate that was essential to the appellant proving prejudice. *Id.* at 662–63.

The OAJC went on to opine, in *dicta,* that even if it was assumed that the appellant had proven that she would have chosen a jury but for counsel's ineffectiveness, she still failed to prove prejudice because she did not "establish by a reasonable likelihood that the outcome of her trial would have been different." *Id.* at 663. In this regard, the OAJC noted, the appellant pointed to nothing in the record to indicate that the bench trial judge had weighed the evidence improperly or incorrectly, or that a jury would have viewed her case more sympathetically. Finally, in a footnote responsive to the Dissenting Opinion, the *Lassiter* OAJC stated that prejudice could not be presumed, noting that the PCRA requires that the prejudice element of an ineffectiveness claim "be **'pleaded and prove[n]** by a preponderance of the evidence.'" *Id.* at 663 n. 8 (quoting 42 Pa.C.S. § 9543(a) and adding emphasis).

In a brief Dissenting Opinion, Mr. Justice Saylor expressed his agreement with the OAJC's holding that a prosecution for murder based on accomplice liability would not support the

(d)(6) aggravating circumstance, but disagreed with the OAJC's finding of no prejudice. In the Dissent's view, the express demonstration of prejudice required by the OAJC was "insurmountable" and left the deprivation of the appellant's constitutional right to a jury trial without a remedy. The Dissent viewed the alleged underlying constitutional deprivation as "presumptively prejudicial" and would have remanded for a new trial. *Id.* at 664 (Saylor, J., dissenting).

In the present case, appellants claim that the Superior Court erred in vacating the PCRA court's new trial order because the failure of trial counsel to request an of-record, oral jury waiver colloquy by the trial court involves a structural error that is not subject to the prejudice requirement of *Strickland.*[12] Appellants urge this Court to adopt the analysis in *McGurk v. Stenberg,* 163 F.3d 470 (8th Cir.1998), and rule that if counsel's ineffectiveness causes a jury waiver that was neither knowing nor voluntary, the defendant does not have to establish that the outcome of the jury trial would have been more favorable than the bench trial that was conducted. Appellants assert that requiring proof of such prejudice would create an insurmountable burden to the restoration of their constitutionally protected right to a trial by jury, which is a fundamental right deserving of heightened protection. Furthermore, appellants contend that *Lassiter* is distinguishable from the present case, as each testified and claimed that he would have exercised his right to a jury trial if only he had been orally colloquied and, in so doing, established the connection between counsel ineffectiveness and jury waiver which the *Lassiter* OAJC found to be lacking in its principal finding on prejudice.

The Commonwealth responds that, except in limited circumstances not implicated here, a defendant must prove actual prejudice in order to prevail on a claim of ineffective assistance of counsel. The Commonwealth further stresses that absent an actual or constructive denial of counsel, or an actual conflict of interest, the U.S. Supreme Court explicitly requires defendants to establish prejudice in order to prevail upon a

---

12. Appellants have filed a single, joint brief.

claim of counsel ineffectiveness. The Commonwealth further observes that *McGurk* is not precedential in this jurisdiction and deems it wrongly decided under U.S. Supreme Court precedent, as it obliterates the distinction between direct review of preserved claims and collateral review of unpreserved claims. Because appellants did not prove, and the PCRA court did not find, *Strickland* prejudice, the Commonwealth submits that the Superior Court's decision should be affirmed.

In the alternative, the Commonwealth renews an argument it made in the Superior Court, but which that court did not reach, given its ruling on prejudice. The Commonwealth argues that appellants did not prove, and indeed the PCRA court did not find, that trial and direct appeal counsel knew, or should have known, that the written, explicit jury waivers executed by appellants were in fact involuntarily executed. With respect to the Lewises, the Commonwealth notes that Attorney Fitzpatrick had no reason to know that the explicit written waivers were not knowing and voluntary; the Lewises never told him that they were coerced or involuntary; and moreover, their signatures on the forms averring that the waivers were knowing and voluntary gave Fitzpatrick reason to believe that questioning the voluntariness of facially-valid waivers would be fruitless. The Commonwealth makes the same argument when addressing Mallory and Attorney Mischak, who served as both trial and appellate counsel.

Before turning to the question of the proper assessment of prejudice in this instance, it is helpful to examine the underlying rights which are at issue. The right to trial by jury is enshrined in both the U.S. and Pennsylvania Constitutions. *See* U.S. CONST. amend. VI; PA. CONST. art. I, § 6. The importance of the right is recognized by the procedural protections in Rule 620 of this Court's Criminal Procedural Rules, which provides that:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall

ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620.[13] As we have noted above, the PCRA court found that the absence of oral waiver colloquies in this case alone conclusively proved that appellants' waivers were invalid and that trial counsel's performance was constitutionally deficient. The analysis is not so simple.

█ The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. "The[ ] essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597, 600 (1973); *accord Commonwealth v. Smith,* 498 Pa. 661, 450 A.2d 973, 974 (1982). Notwithstanding the Rule's reference to a "colloquy on the record," the use of a written jury trial waiver form has been deemed sufficient in the absence of an oral jury trial waiver colloquy. *Williams,* 312 A.2d at 599–600 (rejecting request for per se prophylactic rule requiring relief whenever Rule 1101 (predecessor to Rule 620) is violated; if other evidence proves waiver was knowing and voluntary, purpose of Rule is served); *Smith,* 450 A.2d at 974 (written waiver form "must be accorded prima facie validity").

█ A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional "right." Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted *in absentia* after the defendant fails to appear. *See Commonwealth v. Wilson,* 551

13. This Rule was formerly numbered Pa.R.Crim.P. 1101.

Pa. 593, 712 A.2d 735, 737 (1998). Moreover, the absence of an on-the-record colloquy concerning the fundamentals of a trial by jury does not prove, in an absolute sense, that a defendant failed to understand the right he waived by proceeding non-jury. Consider, for example, a criminally-accused lawyer who waives a jury. Or, consider a career criminal defendant with previous, first-hand experience with jury trials. Or, imagine a reasonably intelligent client whose lawyer informed him, off the record, of the three basics of a jury trial. The record colloquy contemplated by Pa.R.Crim.P. 620 serves a salutary prophylactic purpose, as it makes it plain that a jury waiver is knowing and voluntary, and it creates a record in the event of a later, collateral attack upon the waiver. For the same twin reasons, an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, *e.g.*, waiver of a trial, waiver of the right to counsel, waiver of the right to call witnesses, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc. But the colloquy does not share the same status as the right itself.

The right to a jury trial in criminal cases, unlike the Rule-based requirement of a waiver colloquy, does implicate constitutional concerns. If this case involved direct governmental denial of an explicit request for a jury—if appellants had demanded a jury and the trial judge said, "No"—appellants would have a valid claim that they were denied their constitutional right to trial by jury. But that is not the claim presented here. Appellants explicitly waived their rights to a jury, in writing, on the record. Appellants' shared collateral claim (the Lewises have an added burden concerning appellate counsel which we will address below) is that, notwithstanding their explicit written waiver colloquies, which were attested by their lawyers, the prosecutor and (in two of three cases) the trial judge, those waivers were the product of the ineffectiveness of their trial counsel. Specifically, they allege that their lawyers failed to object when the trial court failed to conduct an on-the-record oral waiver colloquy to supplement the written waivers. If they had been so queried in open court, all

three appellants claim, they would have contradicted their written waivers and demanded a jury. This not uncommon my-record-waiver-was-my-lawyer's-fault claim is far removed from the "constitutional, structural" error that would be at issue if a timely jury demand was wrongly denied. The current claim is also removed from a Rule 620 claim—*i.e.*, a claim that the trial court erred in denying a request for an oral colloquy. No such request was made at trial by any of the appellants.

 Recognizing that the claim here involves a collateral attack focusing upon the Sixth Amendment right to counsel, and that the collateral attack only indirectly implicates the distinct constitutional right to a jury trial and the Rule-based "right" to an oral waiver colloquy, is paramount to its proper evaluation. Of course, lawyers have an obligation to counsel their clients in conjunction with the waiver of basic rights, including the waiver of a jury; but the mere absence of a record oral waiver colloquy does not automatically prove that a right was relinquished unknowingly or involuntarily and that the trial lawyer was ineffective for causing the waiver. When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. Such an inquiry is not resolved by the mere absence of an oral waiver colloquy; instead, the analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client. *See Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 590 (1999) (rejecting per se approach and holding that trial court should determine defendant's actual knowledge in guilty plea colloquy context by looking at totality of circumstances to distinguish whether plea was voluntarily, knowingly, and intelligently made); *Commonwealth v. De-George,* 506 Pa. 445, 485 A.2d 1089, 1091–92 (1984) (permitting "consideration of circumstances outside the content of the of-record colloquy in determining the validity of the waiver" when counsel allegedly was ineffective for failing to object to

trial court's acceptance of defendant's jury waiver without first conducting on-the-record colloquy); *see also Commonwealth v. O'Donnell,* 559 Pa. 320, 740 A.2d 198, 215–19 (1999) (Castille, J., dissenting) (collecting and discussing cases).[14]

The PCRA court's analysis of the underlying claim failed to appreciate this complexity, as it deemed the absence of an oral waiver colloquy alone to be conclusive proof that the jury waivers were both invalid and the product of counsel ineffectiveness.

A further complexity in this case is that the three appellants are not identically situated for purposes of collaterally attacking their waivers. The Lewises were represented by a new lawyer on appeal, while Mallory was represented by his trial counsel. The Lewises' appeals were litigated before this Court's decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). *Grant* adopted a general rule in direct appeals requiring deferral of claims of ineffective assistance of counsel to PCRA review. *Id.* at 738. Pursuant to the prevailing law before *Grant,* however, the Lewises were obliged to raise record-based claims of trial counsel ineffectiveness on direct appeal, upon pain of waiver. The Lewises did not challenge their trial counsel's failure to object that their jury

---

**14.** In *Williams, supra,* this Court rejected a claim that a trial court's failure to conduct an oral waiver colloquy should be subject to a "per se prophylactic rule" requiring reversal of the conviction. The *Williams* Court reasoned as follows:

When we make rules for criminal proceedings we do so in order to protect the rights of the individual and therefore we expect strict compliance with those rules. However, a prophylactic exclusionary rule is applied only in extreme cases where all other attempts to secure compliance have proven unsuccessful. *See generally Mapp v. Ohio,* 367 U.S. 643, 651–652, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In this area there has been no showing of widespread flagrant disregard to justify formulation of such a rule at this time.

Furthermore, where there is a subsequent proceeding in which the waiver is proven to be knowing and intelligent on the record such a prophylactic rule seems unnecessary since the purposes of the rule to ensure the constitutionality of the waiver and our ability to review it, are satisfied. *See Commonwealth v. Godfrey,* 434 Pa. 532, 538, 254 A.2d 923 (1969) (Roberts, J., concurring).

*Williams,* 312 A.2d at 600 (construing Criminal Rule 1101, the predecessor of Rule 620).

waivers were unknowing and involuntary, nor did they object to the absence of Rule 620 oral colloquies.

Accordingly, the Lewises' only prospect for relief on collateral attack is to successfully forward a layered ineffective assistance of counsel claim, *i.e.*, a claim that direct appeal counsel was ineffective for failing to claim that trial counsel were ineffective in failing to object to the absence of an oral jury waiver colloquy, a failure which supposedly led to the entry of unknowing and involuntary jury waivers.[15]

We turn now to the issue accepted for review: whether appellants proved the prejudice necessary to sustain a claim of ineffective assistance in this scenario. Proper resolution of the issue requires this Court to first determine the proper measure of prejudice when the claim of ineffective assistance of counsel relates, not to the substance or fairness of the trial, but to the preliminary proceedings where the right to a jury was waived.

 Appellants argue that prejudice should be presumed in cases where the right affected by counsel's conduct

15. In *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, 1023 (2003), this Court instructed that review of layered claims of ineffectiveness must proceed in this manner:

[A] petitioner must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument . . . on the three prongs of the *Pierce* test as to each relevant layer of representation.

This Court has explained the practical consequences of *McGill* for the PCRA petitioner as follows:

Therefore, in cases where appellate counsel is alleged to be ineffective for failing to raise a claim of trial counsel's ineffectiveness, *McGill* instructs that the inability of a petitioner to prove each prong of the Pierce test in respect to trial counsel's purported ineffectiveness alone will be fatal to his layered ineffectiveness claim. *McGill*, 832 A.2d at 1023; *see also Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 891 (2004); *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 656 (2003). Proving trial counsel was ineffective, however, will establish the arguable merit prong of *Pierce* in respect to appellate counsel. *Rush*, 838 A.2d at 656. The PCRA petitioner is then left to demonstrate that prior appellate counsel's actions lacked a reasonable basis and prejudiced him. *Id.*

*Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 233 (2006).

is the right to a jury trial, with a new trial as the automatic appropriate remedy. *Strickland*, of course, requires that a defendant plead and prove two components in order to gain relief: (1) that his "counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Pierce*, 527 A.2d at 975. A showing of *Strickland* "actual" prejudice requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.[16]

▆▆ The presumed prejudice standard appellants advert to derives from *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland*. Pursuant to *Cronic*, prejudice may be presumed when there has been an actual or constructive denial of counsel, *i.e.*, when counsel's failure has been complete and it is as if the right to counsel has been denied. *See Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119, 1128 (2007). In *Reaves*, this Court described the operation of *Cronic*'s presumption of prejudice:

> *Cronic* recognized that in some cases, the prejudice inquiry of *Strickland* is not required because there are certain circumstances "that are so likely to prejudice the accused

16. In an effort to better focus the *Strickland* analysis, this Court has applied the performance part of the test by looking to both the arguable merit of the claim against counsel, as well as the objective reasonableness of the course taken, or not taken, by counsel. *Commonwealth v. Sneed*, 587 Pa. 318, 899 A.2d 1067, 1076 (2006) (citing *Commonwealth v. Spotz*, 582 Pa. 207, 870 A.2d 822, 829–30 (2005)).

> Thus, the constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Sneed*, 899 A.2d at 1076 (citations omitted).

that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S.Ct. at 2046. *Cronic* suggested that where there has been a complete denial of counsel or where the circumstances are such that any competent attorney would be unable to provide effective assistance, a defendant need not demonstrate that he was prejudiced by counsel's actions. *Id.* at 659–62, 104 S.Ct. at 2047–48. The presumed prejudice exception to *Strickland* has been found to apply where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual conflict of interest. *See [Smith v. Robbins,* 528 U.S. 259, 287, 120 S.Ct. 746, 765, 145 L.Ed.2d 756, 781 (2000) ].

*Reaves,* 923 A.2d at 1128. Furthermore, findings of actual or constructive denial of counsel have been limited to cases where "the acts or omissions of counsel were of the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame." *Commonwealth v. Cousin,* 585 Pa. 287, 888 A.2d 710, 718 (2005).

This Court has employed a *Cronic*-style presumption of prejudice where counsel's constitutional error has caused a total failure in the relevant proceeding. *See, e.g., Commonwealth v. Halley,* 582 Pa. 164, 870 A.2d 795, 801 (2005) (prejudice presumed where counsel failed to file statement of matters complained of on appeal, which led to waiver of all claims); *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564, 572 (1999) (prejudice presumed where counsel's failure to file requested direct appeal unjustified). Additionally, in *Florida v. Nixon, supra,* the U.S. Supreme Court recently reaffirmed the narrow limits of Cronic's presumed prejudice exception. In *Nixon,* the High Court held that a showing of actual prejudice was required where the defendant claimed that counsel was ineffective for conceding guilt at the guilt phase of a capital trial. 543 U.S. at 189–91, 125 S.Ct. 551. The *Nixon* Court also described the infrequency of circumstances giving

rise to the *Cronic* presumption, and reiterated that *Cronic* is limited to situations where counsel's failure is complete, *i.e.,* where "counsel has entirely failed to function as the client's advocate." *Nixon,* 543 U.S. at 189–90, 125 S.Ct. 551.[17] *Accord Cousin,* 888 A.2d at 719 (*Cronic* presumption of prejudice not triggered when trial counsel concedes guilt of lesser crime in closing argument of bench trial).

Moreover, this Court has long required a demonstration of actual prejudice in circumstances involving jury waivers. Indeed, prior to *Strickland* and *Lassiter,* this Court held that counsel's advice to waive a jury trial can only be the basis for a successful claim of ineffective assistance of counsel when; "1) counsel interferes with his client's freedom to decide to waive a jury trial or 2) appellant can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right." *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610, 617 (1975) (citation omitted).

Also prior to *Strickland,* this Court addressed the central issue *sub judice*—ineffective assistance of counsel, where there was a written jury waiver, and an allegedly inadequate oral colloquy—in *Commonwealth v. Smith,* 498 Pa. 661, 450 A.2d 973. The Superior Court in Smith had granted a new trial, finding that counsel was ineffective in failing to object to the defective oral jury waiver colloquy. Justice Roberts, writing for a unanimous court, reversed on the allocatur pleadings. The *Smith* Court began by recognizing that the defendant's understanding of the essential elements of a jury trial was not reflected in the oral waiver colloquy that was conducted. Specifically, the colloquy addressed that the jury would be chosen from members of the community, but did not explore the defendant's understanding that the jury's verdict

17. The High Court has again reaffirmed the narrow contours of the *Cronic* presumption of prejudice in *Wright v. Van Patten,* —— U.S. ——, ——, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008) (*per curiam*) when holding that a state court reasonably applied established federal law when it held that counsel's participation at a plea hearing by speaker phone should not be treated as a complete denial of counsel, and therefore, does not trigger application of *Cronic's* presumption of prejudice over the actual prejudice requirement of *Strickland.*

had to be unanimous, or that he could participate in jury selection. Notwithstanding this defect, the Court emphasized that the trial court record revealed that the defendant had executed a written waiver of his right to a jury trial, that the waiver form addressed the points not addressed in the oral colloquy, and that the written waiver reflected the defendant's full awareness of the essentials of a jury trial. In reversing the grant of ineffectiveness relief, the Court stressed that the written waiver "must be accorded *prima facie* validity," and that the defendant had not challenged the validity of the written waiver. On that record, the Court concluded that the defendant "was aware of his rights, and that trial counsel was not ineffective for failing to object to defects in the colloquy." 450 A.2d at 974.

To similar effect, in the pre-*Strickland* era was this Court's decision in *Commonwealth v. DeGeorge*, 506 Pa. 445, 485 A.2d 1089. In *DeGeorge* we examined whether counsel was ineffective where, as in the present case, the trial court accepted the defendant's signed, written jury waiver without conducting an on-the-record colloquy. 485 A.2d at 1090–91. The *DeGeorge* Court rejected the *per se* approach set forth in *Commonwealth v. Morin*, 477 Pa. 80, 383 A.2d 832, 835 (1978), which required reversal and remand when counsel's ineffectiveness was responsible for the absence of a colloquy or an inadequate colloquy, and instead adopted a totality of the circumstances approach. 485 A.2d at 1091. The approach prescribed in *DeGeorge* went beyond the absence or inadequacy of the colloquy and looked to the circumstances surrounding the waiver to see if the jury waiver was in fact knowing and voluntary. *Id.*

In light of these experiences, and the nature of waivers, the claim at issue falls squarely within the *Strickland* line, and not *Cronic's* limited exception. The present circumstance—where appellants, with the assistance of counsel, executed explicit signed, of-record written jury waivers—is unlike the presumed prejudice scenarios found in *Lantzy* and *Halley*, where counsel's lapse caused the complete default of direct appeals requested by the client. This situation, where valid

written jury waivers were executed, does not represent the "complete failure" of counsel that would trigger the *Cronic* presumption. Therefore, contrary to the conclusion of the PCRA court, the absence of an oral jury waiver colloquy alone does not prove that counsel were ineffective. Rather, to prove trial counsel ineffective, each appellant must show that his understanding of the written waiver was constitutionally impaired by his lawyer's deficient performance, as well as proof that he would have elected a jury but for his lawyer's performance. Thus, we affirm the *Lassiter* OAJC to the extent it determined that, in circumstances like these, actual prejudice must be shown.

Concomitantly, we decline appellants' invitation to adopt the Eighth Circuit's reasoning in *McGurk v. Stenberg, supra.* In *McGurk*, the Eighth Circuit considered counsel's failure to realize that his client had a right to a jury trial in a prosecution for driving while under the influence of alcohol. The *McGurk* court equated counsel's failure to inform his client of that right to a denial of the right to trial by jury, and thus, a structural failure giving rise to a presumption of prejudice. In addition to the fact that *McGurk* is not binding upon this Court, it is distinguishable from the present case. Counsel in *McGurk* failed to inform his client of an important constitutional right. Here, appellants were not only informed of their right to a trial by jury, but executed detailed, explicit waivers addressing that right. *McGurk* is inapposite here; actual prejudice must be shown.

What remains to be determined is the issue that formed the basis of the *Lassiter* OAJC's *dicta* concerning *Strickland* prejudice. Accepting that actual prejudice must be proven in an instance involving a claim of counsel ineffectiveness causing an invalid jury waiver, the focus turns to *Strickland's* requirement that the defendant prove "prejudice" by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The specific question is whether "the proceeding" in this instance means the jury waiver proceeding or the ultimate

trial. The *Lassiter* OAJC posited that "the result of the proceeding" meant the ultimate outcome of the defendant's trial. In light of intervening precedent, this Court's further experience in this area, and the focused arguments we have been provided in this case, we now hold that, when a defendant claims that his jury waiver was not knowing and voluntary due to his counsel's ineffectiveness, to prove actual prejudice the defendant must demonstrate a reasonable probability that the result of the waiver proceeding would have been different absent counsel's ineffectiveness; he does not have to demonstrate that the outcome of a jury trial would have been more favorable than the bench trial.

At least in circumstances where waivers of fundamental rights are concerned, it appears that the "result of the proceeding" referred to in *Strickland* has been deemed to encompass the result of the trial stage where the alleged ineffectiveness took place, and not necessarily the ultimate verdict. The U.S. Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) is instructive. *Hill* involved a challenge to a guilty plea based on a claim of ineffective assistance of counsel. Applying the *Strickland* prejudice standard, the *Hill* Court concluded that the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. The *Hill* Court compared the guilty plea context to ineffective assistance challenges to trial convictions:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the

evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

474 U.S. at 59, 106 S.Ct. 366. Employing a totality of the circumstances approach, the *Hill* Court focused on the outcome of the guilty plea proceeding and did not require the defendant to demonstrate that but for counsel's error, he would not have pled guilty **and** would have achieved a better outcome at trial.

 Since *Lassiter*, this Court, in various contexts, has focused on the result of the stage at trial where the alleged ineffectiveness took place. In *Commonwealth v. Flanagan*, 578 Pa. 587, 854 A.2d 489 (2004) for example, the appellant claimed that his trial counsel was ineffective with respect to his entry of a guilty plea. Focusing on the result of the plea stage, this Court concluded that "[t]he standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea." *Id.* at 502 (citation omitted). In *Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582 (1999), again focusing on the particular stage of trial where the alleged ineffectiveness took place, this Court reasoned that "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." *Id.* at 587; *accord Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1226–27 (2006) (where claim is that counsel was ineffective at penalty phase of capital trial, defendant must show that result of penalty phase hearing would have been different absent counsel's ineffectiveness).[18]

18. There are obviously some pre-trial proceedings where a claim of ineffectiveness would require an analysis on the effect at trial. For

■ Accordingly, we hold that when a defendant seeks to collaterally attack his waiver of a jury trial, on grounds that it was caused by the ineffective assistance of his trial counsel, to prove prejudice, he must demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.*, that he would not have waived his right to a jury trial. In light of this conclusion, we necessarily hold that the Superior Court's approach to the *Strickland* prejudice inquiry in this case was erroneous.

■ What remains for decision is the proper mandate. In this respect, the analysis is not confined to *Strickland* prejudice for, as we have outlined earlier, the Commonwealth has forwarded an alternative argument challenging the PCRA court's evaluation of the Strickland performance inquiry. And, again as we have described above, it is apparent that the PCRA court's analysis of counsel's performance was erroneous in that the court proceeded under the mistaken assumption that the absence of the oral jury waiver colloquy alone was enough to prove both arguable merit and the absence of a reasonable basis respecting trial counsel. As we have explained above, the absence of an oral colloquy alone does not prove that a jury waiver was in fact unknowing or involuntary; rather, the PCRA court must look to the totality of the circumstances. This is especially the case when there was a detailed, written waiver signed, presented, and accepted in open court—a waiver which, under *Smith*, should be accorded *prima facie* validity. Additionally in each case, both the

example, if a defendant could show that his counsel was ineffective in failing to secure suppression of evidence pre-trial, the remedy would not be a new suppression hearing. Instead, determining prejudice in such a case would require examination of the effect of the tainted evidence on the trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"). Claims affecting waivers of fundamental rights, such as whether to go to trial, or whether to be tried by jury, however, are different in kind.

prosecutor and defense counsel gave some measure of assurance to the trial court that the waivers were valid. These, too, are significant representations that must be accounted for.

We recognize that the PCRA court cited to other factors besides the absence of an oral waiver colloquy, including the discussions between the lawyers and their clients regarding the jury waiver. Nevertheless, the PCRA court's legal evaluation of the *Strickland* claims was influenced by an erroneous and controlling preliminary assumption that the absence of the oral waiver colloquies was decisive, and a concomitant failure to recognize the significance of the written waivers. The analysis regarding the underlying merits of appellants' ineffectiveness challenge must be more precise and must account for all relevant circumstances surrounding the waiver.

Moreover, the PCRA court's analysis must be more precise as to the Lewises, because their ineffectiveness claims are layered. To secure collateral relief, the Lewises must show that appellate counsel had, or should have had, reason to know that the jury waivers were invalid, notwithstanding the presence in the record of the written jury trial waivers, and that the defect in the waivers was attributable to trial counsel.

Given the deficiencies we have identified, the proper course in this case is to remand to the PCRA court for further proceedings. This course will allow the PCRA court to conduct an additional hearing, if such is deemed necessary, in order to examine the claims in light of our guidance in this Opinion. We offer no view on the ultimate merit of the claims, leaving that to the PCRA court in the first instance.

For the foregoing reasons, we vacate the order of the Superior Court and we remand this matter to the PCRA court for proceedings consistent with this Opinion. Jurisdiction is relinquished.

Former Chief Justice CAPPY and former Justices NEWMAN and BALDWIN did not participate in the decision of this case.

Justice SAYLOR, EAKIN and BAER join the opinion.