J-S60038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD DRAYTON | : | |
| | : | |
| Appellant | : | No. 191 MDA 2019 |

Appeal from the PCRA Order Entered January 29, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004335-2015

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:

**FILED SEPTEMBER 11, 2020**

In my view, the record clearly demonstrates that Appellant entered a plea in reliance on his counsel's affirmative misadvice, rendering the plea involuntary and entitling him to withdraw it. Because the majority has reached the contrary conclusion by not considering key facts, I must respectfully dissent.

**I.**

Appellant was arrested on July 10, 2015, in connection with a nightclub shooting in Wilkes-Barre, Pennsylvania. At a preliminary hearing on November 25, 2015, a magistrate judge dismissed a count of aggravated

---

[*] Retired Senior Judge assigned to the Superior Court.

assault, finding that "there's not a positive identification" of Appellant in the surveillance video linking him to the discharge of a firearm in the nightclub. Transcript of Preliminary Hearing, 11/25/2015, at 49-50.

The magistrate judge set bail as to the remaining eight charges based on the allegations in the affidavit of probable cause and corresponding testimony in which an officer stated that he could identify Appellant in the surveillance video. *Id*. The magistrate judge found that "blips" of Appellant in the video, in combination with the officer's identification, were enough to establish a *prima facie* case as to the other counts. *Id*. at 50.

Appellant absconded after he was released and federal authorities in New York took him into custody on September 14, 2015. On February 23, 2017, Appellant pled guilty in his federal case and received a prison term of 57 months, followed by three years of supervised release.

At state court proceedings on May 5, 2017, Appellant agreed to plead guilty to one of the eight remaining counts – carrying a firearm without a license. During the plea colloquy, Appellant confirmed that he and plea counsel had discussed all the conditions of the plea. He also testified that plea counsel told him he would serve out the maximum range of his state sentence while still being held in federal custody on his federal sentence. *See* Transcript of Sentencing Proceedings, 5/5/2017, at 7.

Plea counsel confirmed that testimony, as did a letter plea counsel previously sent Appellant on October 5, 2016, in which counsel explicitly

promised that the prosecutor of his state case had agreed to give him "less time in [his] state case than [his] federal case so that [he] will never serve any time in a state prison nor ever be on state parole." The Commonwealth responded at the plea hearing that it had not agreed, as a condition of the plea agreement, to have Appellant serve his entire state sentence while in federal custody. *Id*. at 8.

The majority relies on that lack of an agreement to hold that Appellant knew he could serve state time as if the Commonwealth's description of the plea terms at that moment was the final word on the matter. However, Appellant's plea colloquy continued on.

Immediately after the Commonwealth had stated that the plea agreement lacked a guarantee that no state time or parole would be served, *see id*., plea counsel explained his assumption that the length of the federal sentence (57 months followed by a three-year period of supervised release) would necessarily exceed the 48-month maximum range of the state sentence. *Id*. The Commonwealth then *approved* of defense counsel's assessment, saying, "I tend to agree with that, Judge. *Id*.[1]

---

[1] The signed plea agreement provided that the Commonwealth would agree to dismiss seven of the eight counts charged in the criminal information, and that it would not oppose Appellant's request to have the state sentence run concurrently with his federal term. The agreement acknowledged that the trial court was not bound to its terms, and that Appellant had not been guaranteed a specific length of sentence.

The trial court then advised that it was "between the federal penitentiary and the state prison" as to where Appellant would be housed until the federal term concluded. *Id*. However, the trial court followed that up with, "I'm assuming federal prison would be where he would serve." *Id*. Appellant did not ask any further questions, assuring the trial court that he understood the parameters of his sentence after conferring with counsel. *Id*. at 9.

The trial court accepted Appellant's plea and imposed a term of 24-48 months, to be served concurrently with the federal sentence. Addressing whether any credit for pretrial time served would be awarded as to Appellant's state sentence, plea counsel argued that since the federal term was concurrent, Appellant must receive credit for all time spent in federal custody – about 20 months. After rejecting plea counsel's argument, the trial court also remarked that the issue of credit time on the state sentence would be immaterial because with or without it, Appellant would complete the state sentence while still serving his federal term according to the agreement:

> Again, I'm not sure how it matters. I'm giving him . . . 24 months, but he's got to serve 57 months federally anyway. **The 24 months, all of this is going to run out; and he's still going to be in jail on his federal sentence**.

*Id*. at 23 (emphasis added). Plea counsel agreed that Appellant's time in federal custody would exceed the state sentence regardless of credit time. *Id*.

None of what transpired above could have dispelled Appellant's reasonable understanding that the state sentence would fully run while he

would still be serving the federal term, regardless of whether the trial court or the Commonwealth actively directed it. At the PCRA hearing held on January 29, 2019, Appellant reiterated his counsel's prior assurances and informed the court that he would be released by federal authorities on November 1, 2019, and then transported to a state facility. *See* Transcript of PCRA Hearing, 12/29/2019, at 9-10.

As of the date of his plea, Appellant had accrued credit time on his federal case from September 14, 2015, to May 5, 2017. He has also accrued 223 days of credit for good behavior. Due to those credits, Appellant's supervised release on his federal sentence was scheduled to begin on November 1, 2019, and had plea counsel's advice been true, he would have been released from both state and federal custody on that date. As a result of plea counsel's mistake, however, Appellant will have to go into state custody and possibly state parole once the federal term concludes.[2]

## II.

### A.

The majority in this case affirms the denial of Appellant's PCRA claim, holding that he failed to plead and prove that: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively

---

[2] Appellant has already served the minimum range of his state sentence (24 months), and it is possible he will be granted parole in the state system prior to the end of the maximum range of 48 months, which falls on May 5, 2021.

reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." ***Commonwealth v. Natividad***, 938 A.2d 310, 321 (Pa. 2007); ***see Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001) (same); ***see also Strickland v. Washington***, 466 U.S. (1984). Based on the facts outlined above (many of which the majority has not considered), I would find that Appellant satisfied the three prongs of his claim that plea counsel's ineffectiveness resulted in an involuntary plea.

Throughout the plea colloquy, Appellant and plea counsel expressed a belief that Appellant would never have to go into state custody or serve state parole. Just as importantly, the trial court and the Commonwealth seemed to operate under that same assumption.

It is irrelevant that the negotiated plea agreement contained no express condition requiring the state term to run while the federal term was being served in federal custody. Appellant was repeatedly told by counsel that this would happen as an automatic consequence of his plea. As the trial court put it, "The 24 months, all of this is going to run out; and he's still going to be in jail on his federal sentence." Transcript of Sentencing Proceedings, 5/5/2017, at 23.

These facts satisfy the "arguable merit" and "no reasonable basis" prongs of Appellant's ineffectiveness claim, as counsel gave incorrect advice for no reasonable purpose. ***See Commonwealth v. Barndt***, 74 A.3d 185,

196 (Pa. Super. 2013) ("[C]ounsel's assistance is constitutionally ineffective when counsel misapprehends the consequences of a given plea and misleads his client accordingly about those consequences, without regard to whether the consequences in question are 'direct' or 'collateral.'").[3]

**B.**

With respect to the final "prejudice" prong, I believe the majority has omitted certain critical facts which, if fully considered, must lead to a different result.

"Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness actually caused an involuntary or unknowing plea." *Commonwealth v. Brown*, 48 A.3d 1275, 1277-78 (Pa. Super. 2012). When counsel has misadvised a defendant in some respect, a defendant must show prejudice by establishing "a reasonable

_____

[3] In finding that Appellant did not satisfy the arguable merit and reasonable basis prongs, the majority emphasizes that Appellant did not elicit testimony from his plea counsel at the PCRA hearing. I find this point to be unpersuasive. Plea counsel had advised in a letter months prior to the plea that no state time would be served. At the plea hearing and sentencing, counsel and Appellant expressed that same exact understanding which, by all accounts, was incorrect. It is unclear to me what further insight counsel's testimony could have provided to us or the PCRA court. Additionally, the majority's analysis appears to be inconsistent, as it finds there to be "no support" for Appellant's claim that he relied on misadvice, while *also* recognizing that there was "confusion" by all parties as to how the state and federal sentences would run. Majority Memorandum, at 11 n.2-3. However, if Appellant, counsel, the court and the Commonwealth all plainly misunderstood a material consequence of the plea, then that should preclude a finding that Appellant had a full and correct understanding of the plea terms.

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Hill**, 474 U.S. at 59; **Commonwealth v. Mallory**, 941 A.2d 686, 703 (Pa. 2008) (same).

To establish the prejudice prong of an ineffectiveness claim in the context of an involuntary plea, a defendant bears a light burden:

> "*The 'reasonable probability' test is not a stringent one.*" [**Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002)]. The Court in **Hickman** derived this standard from **Nix v. Whiteside**, 475 U.S. 157, 175 (1986), which held that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."

**Commonwealth. v. Rathfon**, 899 A.2d 365, 369–70 (Pa. Super. 2006) (some citations omitted; emphasis in original); **see also Commonwealth v. Velazquez**, 216 A.3d 1146, 1150 (Pa. Super. 2019) (same). The reasonable probability standard of prejudice is less demanding than the preponderance standard. **See Nix**, 475 U.S. at 175.

Moreover, where the issue concerns the waiver of the right to trial, the "'result of the proceedings' . . . has been deemed to encompass the result of the trial stage where the alleged ineffectiveness took place, and not necessarily the ultimate verdict." **Mallory**, 941 A.2d at 703. "[C]ounsel's assistance is constitutionally ineffective when counsel misapprehends the consequences of a given plea and misleads his client accordingly[.]" **Barndt**, 74 A.3d at 196. "[P]rejudice may be established by demonstrating a reasonable probability that Appellant would have opted to go to trial rather than plead guilty had he been given legally sound advice." **Id**.

Under this standard for prejudice, Appellant only had to plead and prove that there was a reasonable probability that he would have gone to trial but for his counsel's misadvice about a material consequence of his plea.[4] Appellant should be entitled to withdraw his plea because counsel misadvised him as to whether he would be subject to state incarceration and state parole on a standard range state sentence made concurrent to a 57-month federal term.

Well before the plea was entered, Appellant had specifically discussed with counsel his wish to avoid state prison and state parole, and he was assured a plea would get him that result. At the plea colloquy, Appellant put particular emphasis on the fact that he was entering a plea based in part on the promise that he "wouldn't serve any time in a state penitentiary." Transcript of Sentencing Proceedings, 5/5/2017, at 7. The misapprehension

---

[4] The majority discusses *Commonwealth v. Johnson*, 179 A.3d 1153 (Pa. Super. 2018), where a PCRA petitioner challenged the voluntariness of a plea which allegedly resulted from plea counsel's failure to file non-dispositive suppression motions. This Court held in *Johnson* that the petitioner had not satisfied the prejudice prong because he had not explained "why he would have rejected that plea and elected to face [numerous] charges" that had been withdrawn. *Johnson*, 179 A.3d at 1161. The facts of the present case are materially different. Appellant explained, and with ample record support, that the avoidance of a state facility and state parole was a key part of why he entered a plea. Plea counsel falsely assured him that no state time would have to be served outside of federal custody. Under the less stringent standard of "reasonable probability" which applies in this context, I would find that plea counsel's misadvice has sufficiently undermined confidence in the outcome of Appellant's plea proceedings. *See generally Commonwealth v. Barndt*, 74 A.3d 185, 199 (Pa. Super. 2013).

was never corrected, and as it stands, Appellant will not receive the benefit of what he thought he was bargaining for.

Regarding Appellant's potential sentence had he gone to trial, I do not agree with the majority's assumption that Appellant would have taken his plea regardless of counsel's misadvice. The record shows that Appellant's trial prospects were likely to be rather favorable. The magistrate judge found there was no video identification of Appellant as the nightclub shooter. The most serious of the original charges was dropped as a result, and the only explanation for the Commonwealth's plea offer so far below the maximum possible sentence is that it believed the lower term reflected the weakness of its case.

These circumstances provide a valid basis for a plea to be withdrawn at the PCRA stage. *See Barndt*, 74 A.3d at 198 ("[W]e repeatedly have held that erroneous legal advice by counsel regarding the consequences of a plea . . . may constitute a basis for PCRA relief. Appellant alleges that he was given such advice."); *see also Rathfon*, 899 A.2d at 371 ("there was a reasonable probability that Rathfon would not have pled guilty had he known that he would not have been able to serve the sentence in a county facility."); *Hickman*, 799 A.2d at 143 (plea involuntary due to counsel's misadvice that defendant was eligible for boot camp program when defendant was, in fact, ineligible).

Accordingly, because Appellant has established that his counsel was ineffective and the record does not support the PCRA court's findings, Appellant should be entitled to withdraw his plea.