J-S48027-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RALPH M. DUNCAN, | : | |
| | : | |
| Appellant | : | No. 167 WDA 2015 |

Appeal from the PCRA Order December 22, 2014,
Court of Common Pleas, Indiana County,
Criminal Division at No. CP-32-CR-0000978-2012

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RALPH M. DUNCAN, | : | |
| | : | |
| Appellant | : | No. 168 WDA 2015 |

Appeal from the PCRA Order December 22, 2014,
Court of Common Pleas, Indiana County,
Criminal Division at No. CP-32-CR-0000827-2012

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RALPH M. DUNCAN, | : | |
| | : | |
| Appellant | : | No. 169 WDA 2015 |

Appeal from the PCRA Order December 22, 2014,
Court of Common Pleas, Indiana County,
Criminal Division at No. CP-32-CR-0000822-2012

J-S48027-15

BEFORE:  PANELLA, DONOHUE and WECHT, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED AUGUST 18, 2015**

Ralph M. Duncan ("Duncan") appeals from the December 22, 2014 order entered by the Indiana County Court of Common Pleas denying his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  Upon review, we affirm.

On December 7, 2012, Duncan pled guilty to crimes charged at three separate dockets in a single proceeding.  The first related to sexual assaults perpetrated by Duncan upon his stepdaughter, A.H., from the time she was thirteen until she was sixteen.  He was charged with rape, endangering the welfare of children, corruption of minors, indecent assault, sexual assault and involuntary deviate sexual intercourse ("IDSI").[1]  The IDSI charge was dismissed following testimony at the preliminary hearing.  Duncan ultimately pled guilty only to sexual assault, and the Commonwealth nol prossed the remaining charges pursuant to the plea agreement.

The second set of charges, for witness intimidation, grew out of the first, as Duncan threatened his wife, A.H.'s mother, who allegedly knew that Duncan was sexually assaulting A.H., in an attempt to stop her from

---

[1]  18 Pa.C.S.A. §§ 3121(a)(2), 4304(a)(1), 6301(a)(1), 3126(a)(8), 4124.1, 3123(a)(7).

- 2 -

testifying against him. Duncan pled guilty to one count of intimidation of a witness.[2]

The third set of charges, also for witness intimidation, related to a sexual assault allegedly perpetrated by Duncan's son against his stepson in or around 2009. Duncan threatened his stepson not to tell anyone about the assault, causing his stepson to recant. Duncan again pled guilty to one count of intimidation of a witness.

The sentencing hearing occurred on March 25, 2013. In accordance with the plea agreement, the Commonwealth recommended that Duncan's sentences for each of the crimes run concurrently with one another. The trial court rejected this recommendation, sentencing Duncan to four and a half to ten years of incarceration for sexual assault and to two to ten years of incarceration for each of the witness intimidation convictions, ordering all of the sentences to run consecutively. Duncan's aggregate sentence totaled eight and a half to thirty years of imprisonment.

Duncan filed a timely post-sentence motion to modify his sentence, which the trial court denied. At Duncan's request, the trial court reinstated his direct appeal rights nunc pro tunc on May 13, 2013. On direct appeal, counsel filed an **Anders** brief and requested permission to withdraw as counsel. On February 10, 2014, this Court affirmed Duncan's judgment of sentence and granted counsel's petition to withdraw.

---

[2] 18 Pa.C.S.A. § 4952(a)(2).

On May 13, 2014, Duncan filed a timely pro se PCRA petition. The PCRA court appointed counsel, who filed an amended petition on Duncan's behalf on September 25, 2014. The PCRA court held a hearing on the amended petition on December 3, 2014, following which it entered an order and opinion denying relief.

Duncan filed a timely notice of appeal and complied with the PCRA court's order for the filing of a concise statement of errors complained of on appeal. The PCRA court entered a responsive order indicating that it was relying upon its December 23, 2014 opinion denying Duncan's PCRA petition.

On appeal, Duncan raises the following issues for our review:

I.    Whether the PC[]RA court erred when it made a finding that defense counsel was effective counsel, even though counsel knew about [Duncan]'s hearing disability and informed him how to respond during his guilty plea hearing, making his plea unknowing[]?

II.   Whether the PC[]RA court erred when it made a finding that defense counsel was effective counsel, even though counsel told [Duncan] that he would face no more than a three[] and[] one[] half to seven year prison sentence?

III.  Whether the PC[]RA court erred when it made a finding that defense counsel was effective counsel, even though counsel scared [Duncan] into taking [sic] a guilty plea?

Duncan's Brief at 4.

Our review of a PCRA decision "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in

- 4 -

the light most favorable to the prevailing party." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (en banc) (citation omitted). "Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions de novo." ***Id.*** (internal citations and italicization omitted).

In all three arguments raised, Duncan contends that his plea was unlawfully induced by plea counsel's erroneous and/or improper advice and that he is actually innocent of the charges to which he pled guilty. Thus, Duncan couches all three issues in terms of plea counsel's ineffectiveness. In resolving a question of counsel's effectiveness, we begin with the presumption that counsel rendered effective assistance. ***Commonwealth v. Bomar***, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Id.*** (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. ***Id.***

Claims of ineffective assistance of counsel in connection with the appellant's entry of a guilty plea are cognizable under the PCRA. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014), *appeal denied,* 95 A.3d 277 (Pa. 2014).

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [the a]ppellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

*Commonwealth v. Mitchell*, 105 A.3d 1257, 1272 (Pa. 2014) (citation omitted). To prove that he was prejudiced by counsel's ineffectiveness, "the defendant must demonstrate a reasonable probability that the result of the waiver proceeding would have been different absent counsel's ineffectiveness[.]" *Commonwealth v. Mallory*, 941 A.2d 686, 702 (Pa. 2008), *cert. denied*, 555 U.S. 884 (2008).

As his first issue on appeal, Duncan asserts that he was unable to hear "certain points" of the plea colloquy conducted by the trial court, but answered "yes" to the questions posed by the trial court on the advice of counsel. Duncan's Brief at 26. Duncan asserts that this renders his plea "unknowingly and involuntarily" entered. *Id.* at 26-27. He further states that "[d]efense [c]ounsel's act in giving [Duncan] erroneous advice in inducing [Duncan] to plead guilty deeply prejudiced [Duncan]." *Id.* at 27.

Nowhere in this argument does Duncan indicate what portions of the plea colloquy he was allegedly unable to hear or that he would not have entered his plea but for the advice of counsel. We therefore have no basis to conclude that he was prejudiced by counsel's alleged ineffectiveness. *Mitchell*, 105 A.3d at 1272; *Mallory*, 941 A.2d at 702.

Moreover, the PCRA court found that plea counsel did not advise Duncan to answer "yes" to every question posed during the plea colloquy if he was unable to hear the questions. PCRA Court Opinion, 12/23/14, at 6. This finding has ample record support. Although Duncan testified at the PCRA hearing that plea counsel instructed him to "say yes" if the plea court asked him a question he could not hear, N.T., 12/3/14, at 29, plea counsel testified that he never so instructed Duncan. *Id.* at 56. As the PCRA court correctly notes, there were numerous questions presented during the plea colloquy to which Duncan provided more than a simple "yes" as an answer. PCRA Court Opinion, 12/23/14, at 6; *see, e.g.,* N.T., 12/7/12, at 5, 8, 9, 12, 13, 15. Furthermore, as the PCRA court observed, plea counsel informed the plea court of Duncan's hearing impairment and the plea court instructed Duncan to inform the plea court if he could not hear what was being said, which Duncan did on several occasions throughout the colloquy. PCRA Court Opinion, 12/23/14, at 6; N.T., 12/7/12, at 2, 6, 10, 12, 13. As the record supports the PCRA court's conclusion that this claim is meritless, no relief is due. *See Reyes-Rodriguez*, 111 A.3d at 779.

As his second issue on appeal, Duncan asserts that plea counsel was ineffective for advising him that he would receive only three and a half to seven years of incarceration if he entered a guilty plea. Duncan's Brief at 29-31. The PCRA court found that this claim had no merit. PCRA Court Opinion, 12/23/14, at 5.

The record reflects that Duncan testified at the PCRA hearing that pursuant to discussions with plea counsel, he understood that by pleading guilty, he "would probably get like three and a half years to seven." N.T., 12/3/14, at 27. Duncan denied that plea counsel ever informed him that he could receive a longer term of incarceration. *Id.* at 28. He admitted that he signed the plea colloquy, which states that the maximum possible punishments for the crimes to which he pled guilty was thirty years of incarceration, but Duncan testified that he did not understand those portions of the colloquy and "just went along with what I did because I trusted [plea counsel]." *Id.* at 31-32. Duncan further denied that he received any letters from plea counsel explaining the maximum possible punishments for the crimes or that he understood the maximum possible punishments as stated by the plea court during his oral colloquy. *Id.* at 35-36.

Plea counsel, on the other hand, testified that he spoke with Duncan on several occasions regarding the maximum possible sentence he could receive for the crimes to which Duncan pled guilty and that Duncan expressed an understanding of what the maximum sentences were. *Id.* at

60-61. Plea counsel further testified that he wrote a detailed letter to Duncan on September 18, 2012, wherein he, inter alia, "provided the range of sentences, the maximum and the mandatories," and explained in reference to a prior plea deal offered by the Commonwealth, "that a recommendation is not something the [plea court] has to accept." *Id.* at 53-54. Furthermore, plea counsel testified that a representative from the Office of the Public Defender reviewed the written plea colloquy with Duncan, as was the practice of that office, and plea counsel followed up with Duncan afterwards to ensure he had no questions about the colloquy. *Id.* at 58-59. According to plea counsel, Duncan expressed no confusion about the possible term of incarceration to which he was exposed by virtue of his guilty plea. *Id.* at 59. Furthermore, the record reflects that during the oral colloquy, the plea court informed Duncan that his "maximum exposure on the three cases would be thirty [] years [of] imprisonment," and Duncan indicated that he understood. N.T., 12/7/12, at 10.

The PCRA court found plea counsel's testimony to be credible and concluded that plea counsel did not advise Duncan that he would only receive three and a half to seven years of incarceration if he pled guilty, and as stated, we defer to the PCRA court's credibility determinations. *Reyes-Rodriguez*, 111 A.3d at 779. Moreover, "[t]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be

knowingly, voluntarily, and intelligently made." ***Commonwealth v. Willis***, 68 A.3d 997, 1002 (Pa. Super. 2013) (citation omitted). As the record reflects that Duncan's guilty plea was knowingly, voluntarily and intelligently entered, no relief is due.

In his final issue raised on appeal, Duncan contends that plea counsel "scared" him into pleading guilty by telling him he had little chance of winning at trial and that Duncan would be sentenced to ten to thirty years of incarceration if he lost at trial. Duncan's Brief at 33-35. Duncan suggests that because he asserted his innocence and there were defenses that could have been presented, i.e., that his stepdaughter had run away to be with her boyfriend a week prior to making the allegations of sexual assault against Duncan, that counsel's statements induced him to plead guilty when he should not have. ***Id.*** at 34-35.

"Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Lippert***, 85 A.3d at 1100. Relying upon Duncan's answers during his plea colloquy and plea counsel's testimony regarding why he recommended that Duncan enter a guilty plea, the PCRA court found that the issue was meritless, as "[t]here is no indication that [plea counsel]'s advice was outside the range of competence for a criminal attorney[.]" PCRA Court Opinion, 12/23/14, at 4.

The record reflects that plea counsel represented Duncan at both of his preliminary hearings. At that time, he zealously questioned the witnesses presented and advocated on behalf of his client. *See generally* N.T., 1/27/12, at 3-4, 18-37, 39-40, 41, 44, 48-49, 51, 53-58, 60-61, 62-64, 72-74, 75; N.T., 7/30/12, at 5, 7-14, 16-21, 24-27. The record from the first preliminary hearing (pertaining to Duncan's sexual assault of A.H. and intimidation of A.H.'s mother as a witness) reflects that A.H. testified regarding the sexual acts perpetrated against her by Duncan. She testified that he began by touching her vagina and breasts over her clothes and ultimately began raping her when she was fifteen years old, and that her mother was complicit in the assaults, purchasing condoms for Duncan to use to have sex with her daughter. N.T., 1/27/12, at 11-16. A.H.'s mother had given a statement to the police confirming her knowledge of the assaults and that she bought condoms at Duncan's direction so that he could have sex with A.H. *Id.* at 50-52. A.H.'s mother further testified that Duncan threatened that he would throw her out of the house if she did not recant. *Id.* at 46-47. During A.H.'s mother's testimony at the preliminary hearing, the record reflects that Duncan had to be instructed by the lower court not to make "gestures" at the witness. *Id.* at 58.

The record from the second preliminary hearing, pertaining to Duncan's intimidation of T.H., reveals that T.H. reported to police in 2009 that Duncan's adult son had touched him on his "bad spot," but

subsequently recanted. N.T., 6/30/12, at 5, 26-27. T.H. testified that he recanted because Duncan told him that if he did not recant, T.H. would be removed from his mother's care. *Id.* at 6. T.H. testified that he was alone with Duncan when Duncan threatened him. *Id.* at 13. A.H. testified that she was present on several occasions when Duncan threatened T.H. and told him to recant his allegations against Duncan's son. *Id.* at 16-17.

In his brief on appeal, Duncan's claims of innocence are all based upon his perception that the witnesses did not provide credible testimony at the preliminary hearings. Duncan's Brief at 35-37. At the PCRA hearing, plea counsel testified that he believed A.H. was a very credible witness. N.T., 12/3/14, at 67. Plea counsel observed "[w]hen watching her testifying, seeing her demeanor, she had an apparent blatantly outright fear of looking at [Duncan]." *Id.* Plea counsel stated that he considered all possible defenses and did not believe any would be successful at trial:

> Much of what [Duncan] was saying was relying upon [A.H.] having sex with [her] boyfriend. I considered that as problematic at trial, evidentiary reasons why. The issue of anger between the two of them[,] I considered that. I read through the diaries that were spoken about. To me[,] it would have been the only defense that I could have come up with but it did not seem to be a strong defense simply because everything that was written in the diary that I saw could easily be written because she wanted out of the house, not necessarily [to be] with the boyfriend.

N.T., 12/3/14, at 52-53. Plea counsel specifically considered the fact that A.H. ran away a week before disclosing the alleged assaults to police, but counsel did not think this information helped Duncan's defense. *Id.* at 64. Although Duncan thought this was clear proof that A.H. had a motive to lie – that A.H. made up the allegations so that she could be with her boyfriend, of whom Duncan did not approve, *see id.* at 13-15, Duncan's Brief at 35-36 – the record reflects that A.H. testified at the preliminary hearing that Duncan did not approve of her boyfriend because he found her dating to be comparable to her "cheating" on Duncan. N.T., 6/27/12, at 17. If believed, this testimony would be detrimental to his case.

Plea counsel testified that he recommended Duncan accept the Commonwealth's plea offer "based on the facts," and his observation of A.H.'s "testimony and her demeanor during her testimony," which he categorized as "quite telling." N.T., 12/3/14, at 63-64. Plea counsel also noted that Duncan was facing a mandatory minimum sentence of ten years upon conviction of rape, making the plea deal, which did not include the rape charge, a "good deal" from plea counsel's point of view. *Id.* at 57; *see* 42 Pa.C.S.A. § 9718(a)(1).[3]

Viewing the record in the light most favorable to the Commonwealth as we are required, we see no error in the PCRA court's determination that

---

[3] Section 9718 was deemed unconstitutional in *Commonwealth v. Wolfe*, 106 A.3d 800, 805 (Pa. Super. 2014). At the time Duncan entered his guilty plea, however, it was still good law.

counsel was not ineffective for recommending that Duncan plead guilty. **See Reyes-Rodriguez**, 111 A.3d at 779. We agree with the PCRA court that plea counsel did not "scare" Duncan into pleading guilty, but provided him with information about the criminal process and counsel's opinion based upon his observations and knowledge as a criminal attorney. Like the PCRA court, we discern nothing in the record that leads us to conclude that counsel's advice was outside the range of competence required for an attorney in a criminal case. **See Lippert**, 85 A.3d at 1100. As such, Duncan is due no relief.

Order affirmed..

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2015