J-S59011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAEVON TERRELL DIXON, | |
| Appellant | No. 1787 WDA 2014 |

Appeal from the PCRA Order September 30, 2014
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001596-2010

BEFORE:  BOWES, DONOHUE, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 09, 2015**

Taevon Terrell Dixon appeals from the September 30, 2014 order denying PCRA relief.  After thorough review, we affirm.

On January 9, 2012, Appellant pled guilty to third-degree murder and person not to possess a firearm.  We glean the following facts that formed the basis for Appellant's convictions from the Commonwealth's proffer at the plea and sentencing hearing.  Detective Sergeant Thomas Owens of the City of Johnstown Bureau of Police testified under oath that he was called to a shooting incident on July 11, 2010, on Church Avenue.  Patrol officers, who were the first on the scene, found James Pelham in a small parking area across from Appellant's residence.  Mr. Pelham had suffered a gunshot wound to the chest and subsequently died of that injury.  Examination of the

---

* Former Justice specially assigned to the Superior Court.

scene yielded two .38 caliber casings near the victim's body. Investigation revealed that the victim had gone to a Church Avenue address believing there was to be a party there. Upon arriving, he remained in his car. Appellant approached the vehicle and a verbal altercation ensued. Appellant's brother Jharon joined him and the altercation turned physical. Appellant pulled out a handgun and fired two shots, one of which was fired directly at Mr. Pelham and struck him in the chest. Sergeant Owens subsequently learned that Appellant had a prior record that precluded him from owning a firearm.

The preliminary hearing transcript was admitted as an exhibit at the plea hearing and it provides additional details. Officer Eric Gelles and another officer were dispatched to the area of 1031 Church Avenue at approximately 2:30 a.m. due to shots fired. Upon reaching that location, they observed a silver vehicle parked on Church Avenue with the passenger door open. As the officers walked toward the vehicle, they saw a male lying face down in a pool of blood in a driveway next to 1038 Church Avenue. EMS transported the victim to Conemaugh Hospital where he was pronounced dead upon arrival.

The police officers secured and searched the scene and located two shell casings, one in the middle of the street and the other one next to the curb. Additional investigation revealed a number of eyewitnesses to the shooting. A friend of the victim, Corey Porter, testified at the preliminary

hearing that he, Shawn Stephens and the victim had been at the Pony Lounge celebrating the victim's promotion. When the bar closed, they headed to a party. The victim was driving a silver Monte Carlo. None of them was armed. They pulled up in front of a house in Old Conemaugh Borough, which had its lights on, and waited for other people to arrive at the party.

After a short while, Appellant and his brother came out on the porch. Appellant approached the car and asked why they were there. After Mr. Stephens told Appellant that they were there for a party, Appellant returned to the porch. A few moments later, a car containing a group of women arrived. Within the hearing of the victim and his two friends, Appellant instructed the women to tell the people in the silver Monte Carlo to get away from his house. The victim exited his car and stood in front of it in the street. He asked Appellant what the problem was. In response, Appellant screamed that there was no after party. When the victim asked Appellant not to be so loud, Appellant said he did not have to be quiet in front of his own home, pulled out a gun, and shot it into the air. After some verbal bickering, Appellant and his brother Jharon approached the victim and Jharon punched him several times. Appellant hit the victim in the face with a silver automatic handgun. When the victim responded with a punch, Appellant shot him from several steps away. Porter and Stephens fled on

foot.   An autopsy on the victim confirmed that the cause of Mr. Pelham's death was a gunshot wound to the chest at close range.

Appellant was charged with conspiracy to commit murder, criminal homicide, aggravated assault, and person not to possess a firearm.  The conspiracy charge was dismissed after the preliminary hearing.  Following discovery and disposition of pre-trial motions, Appellant pled guilty to third-degree murder and person not to possess a firearm in exchange for a sentence of seventeen and one-half years to forty years imprisonment and withdrawal of the remaining charges.  He executed a written guilty plea colloquy and was orally colloquied at his plea and sentencing hearing on January 9, 2012.

Appellant did not appeal.  On October 4, 2012, he filed a timely *pro se* PCRA petition alleging that his sentence was illegal, his plea involuntary and unknowing, that plea counsel was ineffective in failing to conduct an independent investigation, and charging prosecutorial misconduct.   The court appointed Attorney Gregory Neugebauer as PCRA counsel on October 11, 2012.  No amended PCRA petition was filed.  Following an evidentiary hearing, the PCRA court denied relief on March 22, 2013.   The court concluded that Appellant understood the nature of the charges to which he pled guilty and agreed to the negotiated plea and sentence, and that the plea was neither involuntary nor unknowing.   The court also found no

evidence of any failure on the part of plea counsel to conduct a reasonable investigation of the facts or potential defenses or prosecutorial misconduct.

Appellant filed a *pro se* notice of appeal to this Court and was directed to file a Pa.R.A.P. 1925(b) statement. We determined that the appeal was untimely and quashed it on August 30, 2013. One year later, on August 21, 2014, Appellant filed a second PCRA petition seeking *nunc pro tunc* restoration of his PCRA appeal rights, which he maintained were lost due to abandonment of counsel. There being no objection by the Commonwealth, the court reinstated Appellant's right to pursue his appeal of the denial of his first PCRA petition within thirty days and appointed new counsel.[1]

_____

[1] Appellant's second PCRA petition was facially untimely. However, since the Commonwealth did not object to the PCRA court's lack of jurisdiction, there was no factual inquiry into Appellant's ability to meet the timeliness exception for facts "unknown to the petitioner" and that "could not have been ascertained by the exercise of due diligence," and the record is undeveloped on this issue. 42 Pa.C.S. § 9545(b)(1)(ii). In ***Commonwealth v. Bennett***, 930 A.2d 1264 (Pa. 2007), our High Court vacated this Court's order, which quashed petitioner's reinstated *nunc pro tunc* PCRA appellate rights based on an untimely second petition, and remanded for an evidentiary hearing to determine whether petitioner could prove the factual predicate to surmount the time-bar. We do not believe remand is necessary to determine whether Appellant can meet the timeliness exception as we view the Commonwealth's acquiescence in his abandonment claim to be tantamount to a stipulation. Similar reasoning was espoused by our Supreme Court in ***Commonwealth v. Walter***, 119 A.3d 255, 260 n.5 (Pa. 2015). Therein, the Court relied upon the Commonwealth's stipulation that appellant was abandoned by counsel, which was not appealed, to support a judicial finding of deprivation of a right to appellate counsel "so severe as to be tantamount to a complete denial of counsel" that necessitated reinstatement of appellate rights *nunc pro tunc*. Furthermore, our High

*(Footnote Continued Next Page)*

Newly-appointed counsel timely appealed, and after an extension to permit transcription of the record, complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court penned its Rule 1925(a) opinion and this matter is ready for our review. Appellant raises four issues for our review:

> I. Whether the trial court erred by denying [Appellant's] post-conviction relief act petition when trial counsel was ineffective for failing to investigate possible defenses, e.g., the "Castle Doctrine" (18 Pa.C.S. § 505), and failing to advise the Appellant of those defenses?
>
> II. Whether the trial court erred by denying [Appellant's] post-conviction relief act petition when Appellant's guilty plea was unlawfully induced thus entitling him to relief under the Post-Conviction Relief Act pursuant to 42 Pa.C.S. § 9543(a)(2)(ii)?
>
> III. Whether the trial court erred by denying [Appellant's] post-conviction relief act petition when trial counsel was ineffective for failing to adequately advise the Appellant of the nature and effect of Appellant's guilty plea, thus rendering Appellant's guilty plea involuntary?

_(Footnote Continued)_ ───────────────

Court reasoned that the PCRA court's order became final thirty days later, no appeal by the Commonwealth having been filed, and that it did not have jurisdiction to "tinker with that final judgment." **Id**. at 1162. **See Commonwealth v. Robinson**, 834 A.2d 1157 (Pa. 2003) (a PCRA court's order granting relief, left unchallenged, becomes final thirty days after entry); 42 Pa.C.S. § 5505. The **Walter** Court reasoned that, otherwise, the Commonwealth would have "endless opportunities to collaterally attack a PCRA court's order it declined to appeal, and would provide this Court a right (and perhaps an obligation) to examine the propriety of already final orders granting _nunc pro tunc_ relief at all subsequent stages of post-conviction litigation." **Walter**, **supra** at 260 n.5. **Id**. We find that rationale applicable herein.

> IV.    Whether the Commonwealth displayed prosecutorial vindictiveness, in contravention of the United States and Pennsylvania constitutions, in the circumstances leading to the entry of the guilty plea of Appellant that so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(i)?

Appellant's brief at 2.

In reviewing the PCRA court's denial of post-conviction relief, we must determine whether the court's findings are supported by the record and free of legal error. ***Commonwealth v. Treiber***, 2015 Pa. LEXIS 1775, *9-10 (Pa. 2015). In doing so, we accord great deference to the PCRA court's credibility determinations, and where supported by the record, they are binding on this Court. ***Id***.

Appellant's first three claims allege trial counsel ineffectiveness. To be entitled to relief on such a claim, a PCRA petitioner must establish all three prongs of the ineffective assistance of counsel test enunciated in ***Commonwealth v. Pierce***, 527 A.2d 973, 975-76 (Pa. 1987). He must demonstrate: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011). We start from the presumption that counsel rendered effective assistance. ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010).

Ineffective assistance of counsel claims that are founded on the plea-bargaining process are eligible for review under the PCRA. ***Commonwealth ex rel. Dadario v. Goldberg***, 773 A.2d 126 (Pa. 2001). However, where the underlying ineffectiveness implicates a guilty plea, such a claim will provide relief only "if the ineffectiveness caused an involuntary or unknowing plea." ***Commonwealth v. Diaz***, 913 A.2d 871, 872 (Pa.Super. 2006). This Court held in ***Diaz*** that this test is analogous to "the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea." ***Id***.

First, Appellant contends that trial counsel George Bills was ineffective for failing to investigate and pursue the defense of self-defense based on the Castle Doctrine, which became effective on August 26, 2011. 18 Pa.C.S. § 505. Plea counsel testified at the evidentiary hearing that he advised Appellant after the plea that if he was looking for PCRA issues, he could consider counsel's failure to raise self-defense, and specifically, the Castle Doctrine. Attorney Bills acknowledged that the defense, if founded, may have absolved Appellant of criminal liability. However, he maintained that the Doctrine had only become fashionable after this case and that he did not believe it would have applied on the facts. Trial counsel testified that he viewed the case as one of imperfect self-defense rather than self-defense.

In support of his ineffectiveness claim, Appellant relies upon trial counsel's identification of facts that tended to support self-defense. Counsel

pointed to the fact that that Appellant knew the victim and, on prior occasions, the victim carried a gun. Counsel speculated that such evidence may have supported a reasonable belief on Appellant's part that the victim was carrying a gun on the night in question. There was evidence that Appellant told the victim to leave and fired a warning shot into the air, but the victim did not comply. Finally, there was a physical altercation prior to the shooting. Thus, Appellant contends, the defense of self-defense had arguable merit, counsel had no reasonable basis for not pursuing it, and the outcome could have been different if Appellant had opted to proceed to trial rather than accept a plea.

The Commonwealth counters that counsel's failure to pursue self-defense was not raised in the PCRA petition nor identified as a basis for counsel's ineffectiveness at the commencement of the evidentiary hearing. Hence, it is waived. If not found to be waived, the Commonwealth argues that Appellant failed to prove that the issue meets the arguable merit prong of the **Strickland** ineffectiveness test as the facts do not support self-defense. The Commonwealth maintains that the facts proffered at the plea and sentencing hearing, which were stipulated by the defense to be true, established that Appellant was the aggressor, he approached the victim's vehicle on a public road, and he initiated both the verbal and physical altercation. Thus, Appellant had a duty to retreat. Instead, Appellant fired two shots, one of which fatally struck the victim in the chest.

We find that the self-defense issue is waived since it was not raised in the PCRA petition or identified at the PCRA hearing.  Even if it was not waived, however, Appellant's self-defense claim lacked arguable merit.  42 Pa.C.S. § 9543(a)(2).  Title 18 Pa.C.S. § 505, is entitled "Use of force in self-protection."  It provides in pertinent part that the use of deadly force is not justifiable unless an actor believes deadly force is "necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat[,]" and the actor did not provoke the use of force against him "with the intent of causing death or serious bodily injury." The record is devoid of any evidence that the victim was the aggressor or that Appellant was protecting himself from serious bodily injury or death.  In fact, the victim did not employ force except when provoked by Appellant and his brother's use of force, and then only a punch.  In these circumstances, the record does not support a finding that Appellant believed, correctly or mistakenly, that such force was "necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat."  *Id*. at 505(b)(2).

Furthermore, it is of no consequence that trial counsel did not consider the Castle Doctrine as it was not applicable on the facts herein.  The Doctrine, codified in the self-defense statute, provides that deadly force is justified and that one need not retreat even if he can do so safely if he is in his dwelling or place of work and he was not the initial aggressor.  *Id*. at

505(b)(2)(ii). By all accounts, Appellant was the aggressor. Even if the victim had been the aggressor and presented a threat of serious bodily injury, Appellant was obliged to avoid the use of deadly force by retreating if he could do so safely since he was not in his home or workplace.[2] *Id*. at § 505(b)(2)(ii).

Thus, the facts do not support the defense of self-defense, the Castle Doctrine notwithstanding. Trial counsel considered the possible defense of imperfect self-defense, but was not optimistic that it could be successfully employed. He explained further that he entertained a plea bargain because there was other evidence that undermined self-defense and raised the specter of a first-degree murder conviction. First, Appellant and his brother fled to New York after the shooting and were apprehended with a gun in the car. Secondly, the Commonwealth possessed recordings of Appellant's telephone calls from the jail in which he attempted to influence witnesses not to testify against him. Third, Appellant's brother was going to testify that he told Appellant not to shoot the victim and report inculpatory statements made by Appellant. In light of that evidence, trial counsel recommended the negotiated plea rather than trial.

_____

[2] As the Commonwealth points out, Appellant also cannot claim that he had no duty to retreat from the street based upon 18 Pa.C.S. § 505(b)(2.3), because he possessed a firearm illegally.

Thus, trial counsel was not ineffective in failing to pursue a defense that lacked merit. Furthermore, given the fact that there were numerous eyewitnesses to the shooting, considerable evidence of Appellant's consciousness of guilt, and concern that Appellant's brother would reveal Appellant's inculpatory statements, trial counsel had a reasonable basis for recommending the plea bargain in lieu of trial. Appellant has not met the first and second prongs of the ineffectiveness test and this claim fails.

Next, Appellant contends that he only accepted the plea because trial counsel promised that he would file a post-sentence motion in three to six months and get the sentence reduced. He testified that counsel did not do what he promised and that he accepted the plea in reliance upon counsel's promise. Appellant also maintained that counsel did not explain or read to him the written colloquy but merely directed him to initial and sign it. He testified that he did not understand the court's oral questions regarding the plea, but that counsel had directed him prior to the hearing to answer the court's questions in the affirmative.

Generally, once a defendant enters a plea of guilty, it is presumed that he understood what he was doing and it is his burden to prove otherwise. *Commonwealth v. Moser*, 921 A.2d 526, 529 (Pa.Super. 2007). When there are allegations of ineffectiveness of counsel in connection with a guilty plea, the defendant can prevail only if he can prove that counsel's

ineffectiveness caused him to enter an involuntary or unknowing plea. ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa.Super. 2002).

At the plea hearing, the trial court conducted a thorough oral colloquy on the record. ***See Commonwealth v. Mallory***, 941 A.2d 686, 697 (Pa. 2008) (recognizing that an on-the–record **colloquy** is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, *e.g.,* waiver of a trial). At that time, Appellant denied that anyone had promised him anything better or hinted at more favorable treatment. Critically, trial counsel denied that he ever promised Appellant that he would file a futile post-sentence motion and the PCRA court credited that testimony. We must defer to the PCRA court's credibility determination where, as here, there is record support for that determination. ***Commonwealth v. Johnson***, 966 A.2d 523 (Pa. 2009). This claim fails for lack of arguable merit.

In a related argument, Appellant maintains that trial counsel did not inform him of the finality of his guilty plea, and thus his plea was involuntary. He claims that counsel did not go over the plea and colloquy documents with him and that he did not understand the court's oral colloquy. Attorney Bills presented contrary testimony. Counsel stated that he read and explained the written plea and colloquy to Appellant. He instructed Appellant to listen to the court's questions and answer them

truthfully. It was his belief that Appellant understood what he was doing when he entered the plea.

The PCRA court found, based on the written colloquy and the transcript of the oral colloquy, that Appellant understood the nature of the charges to which he was pleading guilty; understood that he had a right to a jury trial; was aware of the maximum penalties; and agreed to the terms of the negotiated plea. Trial Court Opinion, 3/25/13, at unnumbered 3. We have no basis to disturb that finding. Appellant's final claim of prosecutorial vindictiveness is wholly without support in the record and has been abandoned on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2015