J-S12017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID F. DREESE | |
| Appellee | No. 1370 MDA 2016 |

Appeal from the PCRA Order July 20, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001279-2014

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 28, 2017**

The Commonwealth appeals from the order entered on July 20, 2016, in the Centre County Court of Common Pleas granting David F. Dreese's petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Dreese sought relief from the judgment of sentence of a term of two years' probation imposed on January 23, 2015, following his non-jury conviction of simple assault and harassment.[1]  On appeal, the Commonwealth contends the PCRA court erred in granting Dreese's petition based on his claim that trial counsel was ineffective for failing to discuss with him the implication of waiving his right to a jury trial.  For the reasons below, we affirm in part, and reverse in part.

---

[1] **See** 18 Pa.C.S. §§ 2701(a)(1) and 2709(a)(1).

The facts presented during Dreese's non-jury trial were as follows. On the evening of July 11, 2014, Dreese, his son Seth, Dreese's ex-girlfriend Sherry Wingard, and Wingard's daughter Brooke were sitting around a campfire, talking and drinking, at Dreese's cabin in Penn Township, Centre County. At one point, Dreese and Seth began wrestling but stopped and then all four decided to go into the cabin and play cards. The atmosphere was friendly until Dreese called Seth's mother a derogatory name. *See* N.T., 10/27/2014, at 4-11. Wingard testified that Seth stood up and said, "Do you want to go again?" at which point, Dreese stood up, and the two began wrestling again in the cabin. *Id.* at 11. Wingard testified Dreese was on top of Seth when she saw Dreese punch Seth three times in the face. Wingard pulled Dreese off of Seth, and Dreese retreated to his bedroom. *See id.* at 12-13.

Wingard testified she followed Dreese "to see if he was hurt," and observed him open his gun case and take out his gun. *Id.* at 14-15. Although she tried to take the gun from Dreese, he refused to give it to her. At that point, Seth entered the bedroom, put his arms around both Wingard and Dreese, and all three fell onto the bed. Wingard was then able to grab the gun from Dreese and hand it to Brooke. Dreese then left the cabin. *See id.* at 15-17.

Seth immediately locked the doors and turned off the lights. Approximately two minutes later, Dreese tried to enter the cabin again, but the door was locked. However, Seth then opened the door and hit Dreese in

- 2 -

the face with a metal chair. After that, Brooke called 9-1-1, and Seth, Wingard and Brooke left the cabin, and drove to Wingard's house, where they met with Pennsylvania State Trooper J.R. Pollick. *See id.* at 19-21. Subsequently, Trooper Pollick went to Dreese's cabin and discovered Dreese "passed out, asleep on the bed." *Id.* at 44. The trooper described Dreese as "extremely intoxicated." *Id.* at 45.

Dreese was arrested and charged with simple assault, terroristic threats, harassment, and recklessly endangering another person ("REAP").[2] On September 18, 2014, Dreese signed a waiver of jury trial form. The trial court did not conduct an on-the-record oral colloquy. On October 27, 2014, the case proceeded to a one-day, non-jury trial, at the conclusion of which, the trial court found Dreese guilty of simple assault and harassment, and not guilty of REAP.[3] Dreese filed a post-verdict motion for reconsideration on November 21, 2014. On January 23, 2015, the trial court sentenced Dreese to a term of two years' probation for simple assault, and costs and fines for harassment.[4] The court subsequently denied Dreese's post-verdict motion on January 27, 2015. No direct appeal was filed.

_____

[2] *See* 18 Pa.C.S. §§ 2701(a)(1), 2706(a)(1), 2709(a)(1), and 2705, respectively.

[3] The Commonwealth withdrew the charge of terroristic threats at the beginning of trial. *See* N.T., 10/27/2014, at 3.

[4] The harassment charge was a summary offense. *See* 18 Pa.C.S. § 2709(c)(1).

On January 14, 2016, Dreese filed a counseled PCRA petition, asserting the ineffective assistance of trial counsel for a number of reasons, including counsel's failure to "discuss the implications of a waiver trial[.]" Petition for Post-Conviction Collateral Relief, 1/14/2016, at ¶ 6(a)(i). The PCRA court conducted an evidentiary hearing on June 14, 2016. Thereafter, on July 20, 2016, the court entered an opinion and order granting Dreese relief based upon counsel's failure to discuss with him the implications of waiving a jury trial, and directing that Dreese appear for pre-trial conferences on September 22, 2016. *See* PCRA Court Opinion and Order, 7/20/2016, at 6. This timely Commonwealth appeal follows.[5]

Preliminarily, we note Dreese's probationary term for his conviction of simple assault was set to expire on January 23, 2017. Although not addressed by the PCRA court or either party, it is well-established that to be eligible for PCRA relief, a petitioner must prove that at the time relief is granted he is, *inter alia*, "currently serving a sentence of imprisonment, probation or parole for the crime[.]" 42 Pa.C.S. § 9543(a)(1)(i). "Case law

_____

[5] Although not ordered to do so by the trial court, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on September 9, 2016.

has strictly interpreted the requirement that the petitioner be currently serving a sentence for the crime to be eligible for relief." ***Commonwealth v. Plunkett***, 151 A.3d 1108, 1109 (Pa. Super. 2016). In ***Plunkett***, this Court determined the petitioner was not entitled to relief when "the PCRA court's order was issued while petitioner was still serving the required sentence, but that sentence terminated prior to the resolution of his appeal." ***Id.*** at 1113.

Here, however, Dreese was still serving his probationary sentence for simple assault at the time the PCRA court granted him relief. Furthermore, we find the court implicitly vacated that sentence when it directed Dreese to "appear for Pre-Trial Conferences on September 22, 2016." PCRA Court Opinion and Order, 7/20/2016, at 6. Accordingly, Dreese's sentence for simple assault never expired, and he is still eligible for relief from that conviction in this appeal. However, for the same reason, he is not eligible for relief from his summary conviction of harassment because he was not serving a sentence on that charge at the time he sought PCRA relief. ***See*** 42 Pa.C.S. § 9543(a)(1)(i). ***See also Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super. 2015) (finding appellant was no longer eligible for relief on DUI convictions for which he had completed his sentence, but considering collateral claims with regard to conviction of fleeing while DUI), *appeal denied*, 125 A.3d 1201 (Pa. 2015).

In its sole issue on appeal, the Commonwealth contends the PCRA court erred in granting Dreese relief on his claim of counsel's ineffectiveness in connection with his jury-trial waiver "where the record demonstrates that

trial counsel discussed the implications of a non-jury trial at length and [Dreese] executed a valid waiver[.]" Commonwealth's Brief at 4.

Our review of an order granting PCRA relief is well-established:

This Court reviews a PCRA court's decision in the light most favorable to the prevailing party. **Commonwealth v. Hanible**, 612 Pa. 183, 30 A.3d 426, 438 (2011). Our review is limited to a determination of whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error. **Id.** "A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." **Commonwealth v. Treiber**, ___ Pa. ___, 121 A.3d 435, 444 (2015) (citing **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297, 301 (2011)). We review the PCRA court's legal conclusions de novo. **Commonwealth v. Roney**, 622 Pa. 1, 79 A.3d 595, 603 (2013).

**Commonwealth v. Williams**, 141 A.3d 440, 452 (Pa. 2016). Furthermore, when considering a claim asserting trial counsel's ineffectiveness, we must bear in mind:

"In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" **Commonwealth v. Payne**, 794 A.2d 902, 905 (Pa. Super. 2002), *quoting* 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. **Id.** at 906. "Counsel cannot be found ineffective for failure to assert a baseless claim." **Id.**

To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him. **Commonwealth v. Allen**, 833 A.2d 800, 802 (Pa. Super. 2003).

*Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. 2013).

As stated above, here, the PCRA court granted relief on Dreese's claim that trial counsel failed to adequately discuss with him the implications of waiving his right to a jury trial, thereby resulting in an involuntary and unknowing waiver of his rights. The right to a jury trial is fundamental, and "enshrined in both the U.S. and Pennsylvania Constitutions." *Commonwealth v. Mallory*, 941 A.2d 686 (Pa. 2008), *citing* U.S. CONST. amend. VI; PA CONST. art. I, § 6, *cert. denied*, 555 U.S. 884 (2008). Accordingly, when a defendant seeks to waive his right to a jury trial, Pennsylvania Rule of Criminal Procedure 620 requires the waiver be in writing and made a part of the record, and that the trial court conduct an on-the-record colloquy to "ascertain from the defendant whether this is a knowing and intelligent waiver." Pa.R.Crim.P. 620.

In *Mallory*, *supra*, the Pennsylvania Supreme Court considered whether counsels' failure to object to the absence of an on-the-record waiver colloquy constituted ineffective assistance.[6] The Court found "the mere absence of a record oral waiver colloquy does not automatically prove that a right was relinquished unknowingly or involuntarily and that the trial lawyer was ineffective for causing the waiver." *Id.* at 698. Rather, the Court opined:

---

[6] *Mallory* involved a consolidated appeal of three co-defendants, who each challenged his jury trial waiver. *Mallory, supra*, 941 A.2d at 689.

When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. Such an inquiry is not resolved by the mere absence of an oral waiver colloquy; instead, the analysis must focus on the **totality of relevant circumstances**. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client.

*Id*. (emphasis supplied). The ***Mallory*** Court noted that a "detailed, written waiver signed, presented, and accepted in open court … should be accorded *prima facie* validity." ***Id.*** at 704. Moreover, the Supreme Court explained,

to prove trial counsel ineffective, each appellant must show that his understanding of the written waiver was constitutionally impaired by his lawyer's deficient performance, as well as proof that he would have elected a jury but for his lawyer's performance.

***Id.*** at 702. Therefore, in order to establish prejudice for an ineffectiveness claim involving the waiver of a jury trial, the ***Mallory*** Court held that a defendant "must demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.*, that he would not have waived his right to a jury trial." ***Id.*** at 704.

With this background in mind, we consider the Commonwealth's argument herein. The Commonwealth contends the testimony at the PCRA hearing, particularly that of Dreese's trial attorney, James N. Bryant, Esq., does not support the court's ruling. Indeed, Bryant testified: (1) he met with Dreese on "numerous occasions prior to trial;" (2) he and Dreese "discussed the risks and benefits of a jury trial" as compared to a non-jury

trial; (3) he believed a non-jury trial "would be more advantageous" for Dreese because "they intended to pursue a legal defense (versus a factual one) and that [Dreese] would not come across well to a jury;" and (4) he believed Dreese was "concerned with the costs of a jury trial." Commonwealth's Brief at 14-15.[7]

Moreover, the Commonwealth maintains Dreese's claim that he did not read the written waiver before signing it is "unsupported by reason or common sense." *Id.* at 18. It argues that despite the lack of an on-the-record colloquy, "the totality of the circumstances speak overwhelmingly in favor of the conclusion that [Dreese] was aware of the rights he was surrendering when he waived his right to a jury trial." *Id.* at 16-17. Furthermore, the Commonwealth states Dreese "cannot demonstrate that but for Attorney Bryant's advice to pursue a non-jury trial, the outcome of either the waiver or the trial itself would have been different." *Id.* at 18 (emphasis omitted).

The PCRA court analyzed this claim as follows:

> During the evidentiary hearing, [Dreese] testified that on September 18, 2014, pre-trial conference day, Attorney Bryant presented him with a form and told him to sign it. This form was the jury-trial waiver form which was then accepted and signed by the Honorable Bradley P. Lunsford, and became a part of the record. When presented with this form during the evidentiary hearing, [Dreese] indicated that he recognized his signature on

---

[7] We note the Commonwealth does not provide any record citations in its brief in violation of Pa.R.A.P. 2119(c).

the form but that he had no recollection of its contents, having not read the form on the day he signed it believing it was procedural, and Attorney Bryan not having explained the form, its fundamental purpose, or the rights delineated on it. Attorney Bryant, during his testimony, conceded this fact.

[Dreese] further testified that he was unaware that his waiver was revocable, and had he known this, he would have exercised his right to revoke the waiver. In addition, [Dreese] testified that he had very little understanding of jury trials, having only been called to jury duty once, and having no prior criminal record. Both parties acknowledged some discussion about non-jury vs. jury trial and the risks and benefits of going each route. Attorney Bryant admitted he wanted a non-jury trial the entire time, fearing the jury's reaction to his client's tendency to anger quickly. However, the timing of these conversations is disputed. Even if the Court were to accept Attorney Bryant's testimony that the matter had been discussed prior to pre-trial conferences, it remains clear that at the time of the waiver proceeding, [Dreese] did not understand his rights or the fact that he was waiving them. In fact, [Dreese] testified that he did not realize[] until well after pre-trial conferences that he had waived a jury trial.

Accordingly, the Court finds [Dreese's] underlying claim is of arguable merit. Moreover, the Court acknowledges there can be no reasonable basis for counsel to fail to explain constitutional rights prior to a waiver. Lastly, the Court finds that [Dreese] has satisfied the prejudice prong, both pleading and proving that but for Attorney Bryant's service, the outcome of the waiver proceeding would have been different and he would have insisted on a jury trial.

PCRA Court Opinion and Order, 7/20/2016, at 5-6.

Bearing in mind our standard of review, we find the record supports the PCRA court's factual findings. *See Williams*, *supra*, 141 A.3d at 452. During the PCRA hearing, Dreese acknowledged he had signed the jury waiver form, however, he testified there was "no real discussion" about it. N.T., 6/14/2016, at 7. Rather, he stated his attorney "came to [him] with a

- 10 -

document to sign and asked [him] to sign it, which [he] did." *Id.* at 7. ***See***

***also id.*** at 37 ("Attorney Bryant asked me to sign it, and I signed it as a

matter of procedure[.]'"). Dreese testified he did not read the form, there

was "no conversation" with his attorney about what he had signed, and the

court did not conduct a colloquy regarding his understanding of the jury trial

waiver. ***See id.*** at 7-8. He specifically stated his attorney did not explain to

him "the benefits or detriment" of electing a jury versus a non-jury trial. ***Id.***

at 23. Moreover, although Dreese realized sometime before trial that he had

waived his jury trial rights, he claimed he did not understand that he could

rescind the waiver and request a jury trial. ***See id.*** at 37. Furthermore,

Dreese testified he wanted a jury trial, and had the trial court conducted a

colloquy regarding his rights, he would not have elected to proceed with a

bench trial. ***See id.*** at 9-10.

Bryant's testimony at the PCRA hearing did not contradict Dreese's

recollection. Bryant acknowledged he "always wanted to go non-jury" and

stated he explained the reasons for doing so to Dreese, although "[n]ot at

great length[.]" ***Id.*** at 65-66. Bryant admitted their conversations about

the benefits of a jury trial versus a bench trial were "very brief." ***Id.*** at 66.

Moreover, with regard to Dreese's signing of the jury waiver form, Bryant

testified:

> I just gave him the form. Did I go over that all 12 must agree?
> Do you understand this? Do you understand that? No, I did not
> ever go over the waiver form in depth.

*Id.* at 67.  Moreover, Bryant conceded he never told Dreese that the jury waiver form could be revoked.  *Id.* at 79.

The PCRA court, as factfinder, credited Dreese's testimony that he did not understand the ramifications of waiving his right to a jury trial when he signed the waiver form.  While the Commonwealth claims Dreese's testimony was "unsupported by reason or common sense," we will defer to the PCRA court's credibility determination, particularly where, as here, trial counsel's testimony appears to support the petitioner's claim.  *See* *Williams*, *supra*, 141 A.3d at 452.  Although Bryant may have reasonably believed a non-jury trial would provide Dreese with a better opportunity for acquittal, the decision was Dreese's to make after being **fully informed** of his constitutional rights.

Therefore, viewing the totality of the circumstances, we agree with the ruling of the PCRA court that Dreese's claim has arguable merit.  *See* *Mallory*, *supra*, 941 at 698.  Although Dreese did complete a written jury trial waiver form, he testified he did not read the form or understand the rights he was waiving,[8] and the PCRA court credited his testimony.

_____

[8] We note that the *Mallory* Court opined the completion of a "detailed written waiver signed, presented, and accepted in open court … should be accorded *prima facie* validity."  *Mallory*, *supra*, 941 A.2d at 704.  Here, however, the waiver form was a very brief, one-page document, which Dreese claimed he did not read, and his attorney conceded was not explained to him.  *Compare id.* at 690, 704 (defendants' waiver forms included 39 questions "concerning [defendants'] knowledge and comprehension of the right that they were waiving[,]" and both the
*(Footnote Continued Next Page)*

Moreover, it is undisputed that Dreese had no prior criminal record and, therefore, no experience with jury trials. *See* N.T., 6/14/2016, at 10, 60. Further, regarding any off-the-record discussions, Dreese testified there was "no real discussion" on the topic of his jury trial rights, and even counsel acknowledged their discussions on the subject were "very brief." *Id.* at 7, 66. We also agree that counsel had no reasonable basis for failing to explain to Dreese the constitutional rights he was giving up when he waived a jury trial, and that Dreese demonstrated but for counsel's ineffectiveness, he would have proceeded to a jury trial. *See* PCRA Court Opinion and Order, 7/20/2016, at 6.

Accordingly, finding no error in the PCRA court's determination that counsel was ineffective for failing to adequately inform Dreese of his jury trial rights before Dreese, unknowingly, waived those rights, we affirm the order on appeal granting Dreese relief from his conviction of simple assault. However, because at the time relief was granted, Dreese was no longer serving a sentence on his conviction of harassment, we reverse the PCRA court's order to the extent it granted relief on that conviction.

Order affirmed in part, and reversed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

prosecutors and counsel "gave some measure of assurance to the trial court that the waivers were valid.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2017