J-S53040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN CORLISS | : | |
| | : | |
| Appellant | : | No. 1272 EDA 2020 |

Appeal from the PCRA Order Entered May 27, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001749-2013

BEFORE: SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            Filed: April 30, 2021

      Justin Corliss appeals the order of the Court of Common Pleas of Monroe

County (PCRA court) denying his petition filed pursuant to the Post-Conviction

Relief Act (PCRA). **See** 42 Pa.C.S. §§ 9541-9546. Following a jury trial as to

counts charged in case number 1749-CR-2013, Corliss was found guilty of

sexual offenses against his daughter, C.C., and sentenced to an aggregate

prison term of 30 to 60 years.[1] Corliss now seeks PCRA relief based on an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In that case, as to C.C., Corliss was convicted of Count I (involuntary deviate sexual intercourse with a child) (IDSI); Count 2 (attempted IDSI); Count 3 (indecent assault); Count 4 (indecent exposure); Count 5 (incest); Count 6 (endangering the welfare of a child); and Count 7 (corruption of a minor). The trial on those counts was joined with case number 2173-CR-2013, which concerned similar allegations by a different victim, R.V.

expiration of the statute of limitations period, insufficiency of the evidence, ineffective assistance of counsel, and the quashing of subpoenas by the PCRA court. We affirm.

**I.**

**A.**

The underlying facts and procedural history of this convoluted case have been previously summarized by this Court as follows:

> [Corliss] operated a pet store in Monroe County. In 1993, [Corliss] commenced a romantic relationship with his coworker, K.V. Shortly thereafter, [appellant] moved in the residence K.V. shared with her minor daughter, R.V. In 1995, when R.V. was approximately nine years old, [Corliss] began to molest R.V. At first, [Corliss] would tickle R.V. when they played together. [Corliss'] behavior escalated, however, and he began placing his hands down R.V.'s pants. [Corliss] digitally penetrated R.V. on multiple occasions between 1995 and 1997. The abuse occurred at K.V.'s residence, often while K.V. was in another room. On one occasion, [Corliss] inappropriately touched R.V. during a car trip to New York. The molestation continued until 1997, when [Corliss] moved out of K.V.'s residence. R.V. did not immediately report the abuse.
>
> In 1996, fourteen-year old [D.G.] began to work at [Corliss'] pet store. [D.G.'s] father was a regular customer at the pet store, and [Corliss] had known [D.G.] since she was eleven years old. After [D.G.] started working at the pet store, [Corliss] would tickle her. [Corliss'] behavior escalated, and he began placing his hands down [D.G.'s] pants. Eventually, [Corliss] and [D.G.] engaged in sexual intercourse. [Corliss] also performed oral sex on [D.G.] on multiple occasions.
>
> The abuse occurred at the pet store during regular business hours. On two occasions, [D.G.'s] twelve-year-old friend witnessed the sexual activity. [Corliss] also fondled [D.G.] during car trips to New York. [D.G.] testified that [Corliss] took her on these trips "almost every single Monday" to pick up supplies for the pet store. In addition to the liaisons at work, [Corliss] molested [D.G.] at

K.V.'s residence at least once. In 1997, [D.G.]'s mother learned about the abuse and immediately informed the police.

At No. 743 of 1997, the Commonwealth charged [Corliss] with multiple offenses related to the molestation of [D.G.] Following a trial in 1998, a jury convicted [Corliss] of two (2) counts of statutory sexual assault and one (1) count each of aggravated indecent assault, indecent assault, and corruption of minors. On August 20, 1998, the [trial] court sentenced [Corliss] to an aggregate term of four (4) to ten (10) years' imprisonment. This Court affirmed the judgment of sentence on November 30, 1999. *See Commonwealth v Corliss*, 750 A.2d 366 (Pa. Super. 1999) (unpublished memorandum).

Prior to the start of the 1998 trial, [Corliss] met C.T. at the pet store. [Corliss] and C.T. married, and C.T. became pregnant before [Corliss'] sentencing hearing. C.T. gave birth to [Corliss'] daughter, C.C., in 1999 while [Corliss] was incarcerated. [Corliss] remained incarcerated until 2008. Upon his release, [Corliss] returned to live with C.T. and C.C. C.T. had no concerns about [Corliss] being around C.C., because [Corliss] had convinced C.T. that he was actually innocent of the charges pertaining to [D.G.] When [Corliss] would play with C.C., C.T. noticed that [Corliss] tickled the child and scratched the child's back. The tickling started to bother C.C., and she asked [Corliss] not to touch her, but C.T. did not intervene. [Corliss'] relationship with C.T. ended in 2010, after C.T. discovered that [Corliss] was having an affair with another teenager. In 2013, C.C. informed C.T. that [Corliss] had molested her. C.C. claimed that [Corliss] would put his hands down her pants and touch her vagina, exposed his penis to C.C., and attempted to force the child to perform oral sex on him.

Police arrested [Corliss] for the offenses against C.C. in July 2013. The media reported on [Corliss'] arrest, and R.V. saw the coverage. R.V. decided to contact police and inform them of the abuse she suffered from 1995 until 1997. At No. 1749 of 2013, the Commonwealth charged [Corliss] with sex offenses committed against C.C. At No. 2173 of 2013, the Commonwealth charged [Corliss] with sex offenses committed against R.V.

*Commonwealth v. Corliss*, 2091 EDA 2014, 2105 EDA 2014 (Pa. Super. July 14, 2015) (unpublished memorandum) (footnotes omitted).

The two cases involving the allegations of C.C. and R.V. were tried together, and at that joint trial, the Commonwealth was permitted to introduce evidence of Corliss' prior conduct toward D.G. in case 743-CR-1997. **See id**. (reversing trial court's order denying the Commonwealth's motion *in limine* to admit evidence of prior bad acts under Pa.R.E. 404(b)).

Corliss was found guilty of offenses against both C.C. and R.V., and as to the counts concerning C.C. in case number 1749-CR-2013, he was sentenced to a total prison term of 30 to 60 years. The judgment of sentence was affirmed. **See Commonwealth v. Corliss**, 108 EDA 2017 (Pa. Super. Dec. 8, 2017) (unpublished memorandum); **see also Commonwealth v. Corliss**, 176 MAL 2018 (Pa. Oct. 30, 2018) (denying petition for allowance of appeal). The present appeal only concerns the denial of Corliss' PCRA claims with respect to that case.[2]

**B.**

Within a year from the date that his judgment of sentence became final, Corliss timely petitioned for PCRA relief and he received an evidentiary hearing. The PCRA court denied Corliss' petition in its entirety and he timely appealed. The PCRA court submitted a thorough opinion detailing the history

---

[2] In appellate case number 1239 EDA 2020, we separately review the denial of Corliss' PCRA claims pertaining to R.V.'s allegations in case 2173-CR-2013.

of the case and the reasons for its rulings. **See** PCRA Court Opinion, 5/27/2020.

For greater clarity, we have reworded and renumbered Corliss' appellate issues into six main grounds:

1. The trial court lacked jurisdiction as to four counts because the statute of limitations period had elapsed, barring prosecution.

2. The conviction on the count of deviate involuntary intercourse must be vacated because the alleged conduct does not meet the statutory definition of the offense.

3. Defense counsel performed ineffectively by refusing to challenge prosecutorial comment and prior bad act evidence relating to Corliss' convictions from 1998.

4. Defense counsel performed ineffectively by not calling to the stand an expert witness whose testimony about a 1997 DNA report would have exonerated him of earlier convictions that were introduced at trial under Pa.R.E. 404(b).

5. Defense counsel performed ineffectively by failing to impeach the prosecution's witnesses on cross examination.

6. The PCRA court erred in quashing subpoenas issued for witnesses whose testimony would have proven defense counsel's ineffectiveness.

**See** Appellant's Brief, at 4-5. Each of these issues will be addressed in turn below.[3]

---

[3] "Our standard of review in PCRA appeals is limited to determining whether the findings of the PCRA court are supported by the record and free from legal error." **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009).

**II.**

Corliss first argues that his convictions as to four counts (indecent assault, indecent exposure, corruption of minors, and endangering the welfare of children) must be vacated because the two-year statute of limitations period expired before the charges were filed, divesting the trial court of jurisdiction. The PCRA court properly denied this claim, as it was previously litigated on direct appeal. *See Commonwealth v. Corliss*, 108 EDA 2017 (Pa. Super. Dec. 8, 2017); *see also Commonwealth v. Corliss*, 176 MAL 2018 (Pa. Oct. 30, 2018) (denying petition for allowance of appeal).[4]

We explained in pages 8 and 9 of our memorandum that the above counts are subject to a statutory exception to the limitations period. Subsection 5552(c)(3) provides that if such offenses are committed against a minor victim, then they may be prosecuted "up to the later of the period of limitation provided by law after the minor has reached 18 years of age *or* the date the minor reaches 55 years of age." 42 Pa.C.S. § 5552(c)(3) (emphasis added). There was no dispute in this case that C.C. was under the age of 55 at the time the counts were charged, so the exception applied.

---

[4] Corliss also unsuccessfully raised this exact jurisdictional claim in a petition for writ of *habeas corpus* filed in federal court. *See Corliss v. McGinley*, 2020 WL 4758250 at *6 (M.D. Pa. Aug. 17, 2020). The PCRA court has further enumerated several other fruitless attempts by Corliss to raise the same claim. *See* PCRA Court Opinion, 5/27/2020, at 52 n.9.

A prerequisite for PCRA relief is that a claim of error has not been previously litigated. **See** 42 Pa.C.S. § 9543(a)(3). This occurs when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). Corliss received a ruling as to this statute of limitations claim on direct appeal, and our Supreme Court declined to grant further review. Thus, the PCRA correctly determined that the prior resolution of this issue compelled the denial of the reasserted claim.

## III.

Corliss next contends that the PCRA court erred in denying his claim that the evidence was legally insufficient to sustain his conviction on the count of involuntary deviate sexual intercourse (IDSI). Again, the PCRA court did not err in denying this claim because it was previously raised on direct appeal, and the denial of the claim was affirmed. **See Commonwealth v. Corliss**, 108 EDA 2017 (Pa. Super. Dec. 8, 2017); **see also Commonwealth v. Corliss**, 176 MAL 2018 (Pa. Oct. 30, 2018) (denying petition for allowance of appeal).

In our memorandum, we discussed the statutory definitions of IDSI in 18 Pa.C.S. § 3123(b) and 18 Pa.C.S. § 3101. We then explained that the evidence presented at trial was legally sufficient to meet those definitions:

> C.C. . . . testified that [Corliss] touched her chest and vagina, exposed his penis, tried to place his penis in her mouth, and put his mouth directly on her vagina. We find that this testimony supports the jury's guilty verdict for IDSI. **See generally**

- 7 -

> ***Commonwealth v. Mawhinney***, 915 A.2d 107, 111 (Pa. Super. 2006), ***appeal denied***, 932 A.2d 1287 (Pa. 2007) (finding that the victim's testimony describing elements of IDSI is sufficient evidence to warrant conviction).

***Corliss***, 176 MAL 2018, at 10-12. Thus, the PCRA court correctly ruled that this claim is now barred because it has already been fully litigated.

**IV.**

We now turn to Corliss' claims of ineffective assistance of counsel. The *first* claim is that defense counsel failed to challenge the admission of evidence of his sexual offenses against D.G. The *second* claim is that defense counsel failed to call to the stand an author of the DNA report from that prior case. The *third* claim appears to be that defense counsel failed to adequately impeach C.C.'s credibility through the cross-examination of witnesses.

"In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002) (quoting 42 Pa.C.S. § 9543(a)(2)(ii)). Counsel is presumed to be effective and the petitioner has the burden of proving otherwise. ***Payne***, 794 A.2d at 906. "Counsel cannot be deemed ineffective for failure to assert a meritless claim." ***Id***.

To prevail on a claim of ineffectiveness, a PCRA petitioner must show that (1) the claim is of arguable merit; (2) counsel had no reasonable strategic

- 8 -

basis for his or her action or inaction; and (3) counsel's ineffectiveness was prejudicial. **See Commonwealth v. Allen**, 732 A.2d 582, 587 (Pa. 1999). Prejudice in this context is defined as an error that was reasonably likely to affect the outcome of the proceedings. **See Commonwealth v. Mallory**, 941 A.2d 686, 702 (Pa. 2008). Failure to satisfy any of these three prongs is fatal to an ineffectiveness claim. **See Commonwealth v. Wholaver**, 177 A.3d 136, 144 (Pa. 2018).

**A.**

We dispose of the first ineffectiveness claim by referring to our previous memorandum in which the merit of the underlying evidentiary issue was decided. In **Commonwealth v. Corliss**, 2105 EDA 2014, 2091 EDA 2014 (Pa. Super. July 14, 2015), the Commonwealth filed an interlocutory appeal of the trial court's exclusion of Corliss' prior offenses against D.G. We held that under Pa.R.E. 404(b), the criminal conduct was relevant to prove the allegations of C.C. in the present case. To remedy the error, we reversed the trial court's ruling and remanded for further proceedings consistent with our mandate.

When the prosecution went on to refer to Corliss' prior convictions from his 1998 case throughout the trial in 2016, it would have been improper for defense counsel to object or seek other relief. By then, the issue had already been adjudicated in the Commonwealth's favor. Counsel may not be found ineffective for failure to assert a baseless claim.

**B.**

For similar reasons, defense counsel was not ineffective for failing to call to the stand Beth Giles, an author of the DNA report compiled in 1997. Corliss argues that the testimony of this witness would have established that the DNA report was exonerating as to the alleged crimes against D.G., impeaching the latter witness' credibility. The record does not support this claim.

To establish that counsel is ineffective under the PCRA by failing to call or interview a potential witness, the petitioner must establish that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007).

Corliss did not carry this burden, especially with respect to the second, fourth and fifth prongs above. He made no showing that Giles was available or willing to testify at the trial in 2016. He made no showing that Giles would have given any testimony that would conflict with the contents of the DNA report already in Corliss' possession since 1997.

With respect to the final prejudice prong, we note that for years, Corliss has tried and failed to prove the existence of a government conspiracy to misrepresent the DNA report as "inconclusive." He has repeatedly sought to relitigate his convictions from the 1998 case, arguing that the DNA report was

actually exonerating.[5] Yet there is no basis in the record from which we could conclude that the lack of testimony from Giles was so prejudicial as to deprive Corliss of a fair trial. Thus, the PCRA court did not err in denying the claim that defense counsel performed ineffectively in this regard.

## C.

It appears that Corliss' third ground of ineffectiveness is that defense counsel did not adequately question C.C. and other witnesses about why she refrained from reporting any sexual abuse in 2010, when, at age 10, she was interviewed for purposes of a child custody dispute. Corliss posits that a more aggressive approach on this topic would have bolstered his theory that C.C. made up the accusations to appease her vindictive mother, Corliss' ex-wife. *See* Appellant's Brief, at 67-74.

As to this claim or series of claims, Corliss fails to develop an argument that is cogent enough for us to directly address. It is more of a catch-all assertion of ineffectiveness that does not adequately specify what counsel should have done differently with respect to a particular witness or piece of evidence. "When issues are not properly raised and developed in briefs, [or] when the briefs are wholly inadequate to present specific issues for review[,]

_____

[5] Corliss has recently attempted to collaterally attack his convictions in the 1998 case by introducing an expert opinion that the DNA report was, in fact, exculpatory. In **Commonwealth v. Corliss**, 1232 EDA 2020 (Pa. Super. 2020), we discuss in more depth why the PCRA procedurally bars all such claims and precludes any attempt to use post-conviction proceedings as a means of proving his innocence in case 743-CR-1997.

a Court will not consider the merits thereof." ***Commonwealth v. Sanford***, 445 A.2d 149, 150 (Pa. Super. 1982).

We, therefore, dispose of these remaining claims by adopting the portion of the PCRA court's opinion that addresses all of Corliss' ineffectiveness grounds. ***See*** PCRA Court Opinion, 5/27/2020, at 19-29.

**V.**

Lastly, we consider Corliss' claim that the PCRA court erred in summarily quashing subpoenas of several individuals who were not called to the stand at his trial in 2016. Corliss argues that these witnesses were relevant to prove that defense counsel was ineffective, and that had counsel sought to question the witnesses, their testimony would have exonerated him.

The PCRA court has detailed in its opinion why quashing these subpoenas could not have prejudiced Corliss in the preparation of his case:

> All of the witnesses subpoenaed were irrelevant to these cases and were either involved in [Corliss'] previous 1998 conviction, are current sitting judges, the prosecutor in these cases, or they are witnesses whose testimony would have been privileged.
>
> The witnesses subpoenaed by [Corliss] include James Butz, Esq. (counsel for Ms. Tsang in a custody matter with [Corliss]), Daniel Lyons, Esq. (custody conciliator), Beth Giles (State Police crime lab at Greensburg, re: 1997 case DNA report), Sandra Singer (State Police crime lab at Wyoming, re: 1997 case DNA report), Brian Germano ([Corliss'] counsel at trial in the 743 CR 1997 matter and currently a Magisterial District Justice), Honorable David J. Williamson (sitting judge in these matters), Honorable Stephen Higgins (judge presiding over custody/support matters of [Corliss]), Patricia Cheslock (counselor who met with C.C. in counselling sessions prior to the allegations being made in case 1749 CR 2013), Detective Thomas Lynott (affiant in case 1749 CR 2013 and 743 CR 1997), Michael Rakaczewski (prosecutor in these

cases), and David Skutnik, Esq. (counsel for [Corliss] for a period of time in case 743 CR 1997).

Motions to quash the subpoenas of Attorney Butz, Attorney Lyons, Ms. Giles, Ms. Singer and M.D.J. Germano were filed and granted by this court prior to the PCRA hearing. Ms. Cheslock and Attorney Skutnik did not appear at the hearing and there was no proof of service on them. This court denied the subpoena requests as to Judge Williamson, Judge Higgins, Attorney Rakaczewski, and Detective Lynott at the PCRA hearing.

The testimony of the prosecutor in this case is not relevant to any issues raised in the PCRA. The sitting judge in these matters is not a proper witness and [Corliss] showed no grounds to compel such testimony.

Judge Higgins was involved in [Corliss'] custody/support issues and his testimony would not be relevant or permitted. Patricia Cheslock did not appear at the hearing and [Corliss] did not request her appearance at time of the PCRA hearing nor did he show that service of the subpoena had been made.

Ms. Cheslock was a counsellor who allegedly met with C.C. sometime in or about 2012 or 2013. She was not called as a witness at time of trial, and her testimony would have been irrelevant to the issues properly allowed in this PCRA matter.

The other subpoenas were denied prior to the PCRA hearing based upon the reasons set forth in the various motions to quash.

PCRA Court Opinion, 5/27/2020, at 10-12.

Having reviewed the relevant materials in the record, the PCRA court's reasoning and Corliss' arguments on appeal, we find no error. Neither the individuals involved in the trial in 1998 nor the individuals who produced a DNA report in 1997 have any relevant testimony to offer at this point. Furthermore, as discussed in our memorandum in case 1232 EDA 2020, Corliss long ago exhausted his chances to prove that there was a conspiracy

- 13 -

to misrepresent the DNA report as "inconclusive" when it was supposedly exonerating. The PCRA prohibits him from relitigating his convictions in the underlying matter at docket number 743 CR 1997.

The remaining witnesses – those relating to the more recent case at docket number 1749-CR-2013 – were also properly excused from testifying. Corliss has argued that during a custody dispute in 2010, Judge Higgins, Lyons and Butz each interviewed C.C. after the alleged sexual offenses had occurred, and yet C.C. made no mention of them at that time, instead waiting until 2013 to do so; Dr. Cheslock allegedly interviewed C.C. in 2012 or 2013. Corliss maintains that the testimony of these witnesses would have somehow proven that C.C. fabricated her accusations, and that his defense counsel was ineffective for failing to bring that fact to light at trial.

By statute, however, all those conversations were privileged, and Corliss had no right to compel their testimony in order to discredit his daughter, C.C. *See* 23 Pa.C.S. § 6116 (Protection from Abuse Act); 42 Pa.C.S. § 5945.1 (Sexual Assault Counselor Privilege); 42 Pa.C.S. § 6307 (Juvenile Act); 23 Pa.C.S. § 6301-6385 (Child Protective Services Law). This is especially so because the reasons Corliss offers for delving into that material are nonsensical, and he has cited no legal basis for overcoming these privileges.

For all of the above reasons, the PCRA court committed no reversible error, and the order on review must stand.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:4/30/21*